CENTRAL TRUST CO. v. BURNET, Commissioner of Internal Revenue.
No. 4964.

Court of Appeals of District of Columbia.

Argued Nov. 4, 1930.
Decided Dec. 1, 1930.

Wm. S. Hammers, of Washington, D. C., for appellant.

Mabel W. Willebrandt, Asst. Atty. Gen., and C. M. Charest, Sewall Key, S. Dee Hanson, and J. H. McEvers, all of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

VAN ORSDEL, Associate Justice.

This appeal involves income tax for the year 1920 brought by the Central Trust Company, administrator of the estate of Azel Ford, deceased.

It appears that Azel Ford was engaged in business in the District of Columbia and became involved in litigation with one L. D. George, in which Ford was charged as agent of the plaintiff George with accountability of the proceeds of certain shares of stock and interest in corporations. The action was based upon fraud and deceit. A decree against Ford was entered in the Supreme Court of the District of Columbia on June 29, 1917, to determine the amount of which involved an accounting. The case was referred to the auditor of the Supreme Court for a determination of the amount due George. The auditor, on October 15, 1920, found and reported to the court that Ford was accountable to George in the sum of $67,626.54. In the year 1921, a supplemental account was rendered by the auditor against Ford in the additional amount of $63,145.09. In 1922 the judgments, based upon the approved findings of the auditor, were compromised by the payment by Ford of $85,000, plus $3,800 legal fees.

In December, 1920, Ford entered in his ledger as an accrued liability $67,626.54, the amount found due by the auditor in his report of October 15th. Ford deducted this amount in his income tax return for the year 1920 as a loss sustained in that year. The Commissioner of Internal Revenue disallowed this deduction, and determined a tax deficiency of the calendar year 1920 in the amount of $18,095.28. The action of the Commissioner was affirmed by the Board, 13 B. T. A. 924; and from the decision this appeal was taken.

The appeal involves the single question of whether the deduction for a loss may be taken during the period when such loss is in litigation, or whether the matter must await the final determination of the litigation and be taken as a whole at that time. In the present case, the litigation continued until the final compromise settlement was reached in 1922, when the total amount of the loss sustained was compromised at $88,000.

It clearly appears, we think, that at the time the entry in question was made by Ford on his books in 1920 the case was still a con-

tested one, and this is sustained by the additional finding of the auditor in 1921 and the compromise settlement of the combined amounts in 1922.

The right of Ford to make a deduction for the losses sustained in this litigation is not contested, indeed it clearly comes within the provisions of section 214(a) of the Revenue Act of 1918, 40 Stat. 1057. The time, however, when deduction can be made is fixed by Treasury Department Regulations 45 (1920 Edition) article 111, which, among other things, provides: "Each year's return, so far as practicable, both as to gross income and deductions therefrom, shall be complete in itself. * *  * Any amount paid pursuant to a judgment or otherwise on account of damages for personal injuries, patent infringement or otherwise, is deductible from gross income when the claim is put in judgment or paid, less any amount of such damages as may have been compensated for by insurance or otherwise."

We think the case is controlled by the decision of the Supreme Court in Lucas, Commissioner of Internal Revenue v. American Code Co., Inc., 280 U. S. 445, 50 S. Ct. 202, 204, 74 L. Ed. 538, where the claim for a refund was based upon a judgment in a suit for damages by an employee under an eighteen-year contract, who alleged that he had been wrongfully discharged by his employer. While the suit was pending, the company in 1919 set up on its books a reserve equal to the amount of commissions claimed, $14,764.79. At the close of 1920, the amount in this reserve was increased by $32,994.09. In 1922 judgment was entered against the company in the sum of $21,019.19. It was sought to deduct the reserve set up in 1919 from the tax return for that year. The Commissioner of Internal Revenue rejected the claim, and asserted a deficiency. His ruling was sustained by the Board of Tax Appeals, 10 B. T. A. 476. Its decision, however, was reversed by the United States Circuit Court of Appeals, 30 F.(2d) 222. The decision of the Circuit Court was reversed by the Supreme Court, where it was held that, since the statute requires that losses be deducted in the years in which they are sustained, the rule forbids deductions in contested cases until there is a final judgment or the claim has been finally settled. Mr. Justice Brandeis, speaking for the court, said: "In the case at bar, the contract had nearly 18 more years to run, at the time of its breach. Liability for the breach was denied and strenuously contested, the litigation being carried to the highest court of the state. The amount of the damages, if any, was wholly unpredictable. While the facts determining liability had occurred in the year of the breach, the amount to be recovered, if there was legal liability, depended in large part on the course of future events. Farquhar was under a duty to mitigate damages. He might have procured new employment which would have reduced his recovery to a nominal amount. Or, recovery might have been reduced or defeated by his death. Finally, the company did not accrue on its books, within the tax year, a liability in the estimated amount of the loss. The reserve set up had no relation to the apprehended total loss. It constituted simply the amount of the commissions which would have been payable in that year, if Farquhar had remained in the company's employ. That the company did not intend the reserve to be an accrual of the total estimated loss is clearly indicated by the fact that, in 1920, it charged to the reserve, to cover the commissions which would have been payable in 1920, an additional amount, more than double that charged in 1919."

In the instant case, the finality of the decree of the court was dependent upon the amount ultimately found to be due by the auditor when the same had been approved by the court. Until this was determined it remained a contested case in the course of litigation, and was so recognized by Ford in his compromise payment of the judgments in 1922.

The decision of the Board of Tax Appeals is affirmed.