## H. LIEBES & CO. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 8366.

Circuit Court of Appeals, Ninth Circuit.
June 14, 1937.

Joseph Haber, Jr., of San Francisco, Cal., for petitioner.

Robert H. Jackson, Asst. Atty. Gen., and Sewall Key, Norman D. Keller, and E. W. Pavenstedt, Sp. Assts. to Atty. Gen., for respondent.

Before WILBUR, GARRECHT, and HANEY, Circuit Judges.

HANEY, Circuit Judge.

The Board of Tax Appeals decided that there was a deficiency in the income tax paid by petitioner for the fiscal year ending January 31, 1930, in the sum of $11,906.43. Petitioner filed a petition asking review by this court of that decision.

Certain facts related in Whitelaw v. United States (D.C.Cal.) 9 F.(2d) 103, are helpful, historically, to an understanding of the facts before us. After the United States had purchased Alaska from Russia, these two countries divided jurisdiction as to taking seals in the Bering Sea between them, and each government claimed to have absolute jurisdiction over its entire share, outside as well as within the 3-mile limit. British and American subjects carried on sealing operations in that sea. An arbitration tribunal decided later that jurisdiction of the United States did not extend beyond the 3-mile limit. The United States

thereupon compensated for seizure by it of British vessels beyond the 3-mile limit. Likewise, Russia compensated for American vessels seized by it, beyond the 3-mile limit.

A decision of this court held that the jurisdiction of the United States did not extend beyond the 3-mile limit, so that vessels owned by citizens of this country, seized by the United States, were seized unlawfully. Whitelaw v. U. S. (C.C.A.9) 75 F. 513, 21 C.C.A. 434. No remedy was afforded such owners, however, until the Act of June 7, 1924, 43 Stat. 595 (28 U. S.C.A. § 52), was passed. By the terms of that act, jurisdiction was conferred on a California District Court to hear and determine such claims "for damages or loss occasioned by or resulting from the seizure, detention, sale, or interference with their voyage by the United States of vessels charged with unlawful sealing in the Bering Sea and water contiguous thereto and outside of the three-mile limit during the years 1886 to 1896, inclusive, and to enter judgment therefor."

It appears from the stipulation of facts that the surviving trustee of Pacific Trading Company, a California corporation which had been dissolved, sued on a claim for interference with sealing operations of its vessels, case No. 17,540. In case No. 17,541 petitioner sued on a claim for interference with such operations of its vessels. In case No. 17,543, the surviving trustee mentioned and others sued for interference with the sealing operations of a vessel, an 11/16 interest in which was owned by Pacific Trading Company, and the remainder by others.

On May 23, 1927, judgments were rendered for the plaintiffs in cases numbered 17,540 and 17,543, and the judgments were paid on August 22, 1928. On September 14, 1928, certain heirs at law sued in the state court alleging that their intestate was the owner of ½ of the capital stock of Pacific Trading Company and entitled to ½ of the net amount of the judgments in actions 17,540 and 17,543. The personal representative of a decedent intervened, claiming that her intestate was the owner of some of such stock. Petitioner intervened claiming to be the owner of all the stock. The judgment in the state court action was rendered on February 19, 1929, and sustained petitioner's claim, and petitioner received on February 28, 1929, the net amount of $70,061.94.

On December 28, 1928, petitioner recovered judgment in case No. 17,541, which was paid May 31, 1929. The net amount received by petitioner was $36,455.17.

In its income tax return for the fiscal year ending January 31, 1930, petitioner did not report any amounts received from the judgments mentioned. Respondent audited the return, adjusted the net income to include $106,517.11 (the total of the net amounts received), and assessed a deficiency in the tax paid by petitioner in the sum of $11,906.43. Petitioner, by petition to the Board, asked a redetermination of the deficiency. The Board sustained the assessment made by respondent, and the petition for review, now before us, was then filed.

In its opinion, the Board said: "* * * While the parties have not stipulated that petitioner kept its books and made its returns on an accrual basis, the arguments of both parties proceed on that assumption, which we accept for the purposes of this discussion." In its brief, here, petitioner says that it "accounted on an accrual basis." Respondent says in his brief: "* * * it may be stated that the evidence, i. e., the stipulation of facts, does not state that petitioner kept its books on the accrual basis. In the absence of proof it cannot be presumed that a taxpayer kept its books on such basis. See Niles Bement Pond Co. v. United States, 281 U.S. 357, 361 [50 S.Ct. 251, 252, 74 L.Ed. 901]. * * *"

It is true that the record does not disclose upon which basis petitioner accounted, that is, whether it used an "accrual" basis, or a "cash" basis. If petitioner made its returns on a "cash" basis, it is obvious that the Board's decision was correct for the income was received during the fiscal year ending January 31, 1930. On the other hand, if petitioner reported on the "accrual" basis, then we must decide whether or not the income received during the fiscal year ending January 31, 1930, also accrued during that year.

The Revenue Act of 1928, c. 852 (45 Stat. 791), provides in section 41 (26 U. S.C.A. § 41 and note) that a taxpayer may report net income on the basis of the annual accounting period used, that is for a fiscal year, or for a calendar year; it also provides that the computation shall be made "in accordance with the method of accounting regularly employed in keeping the books of such taxpayer."

Article 91 of Treasury Regulations 74, promulgated under the Revenue Act in question, provides in part:

"Any claim existing unconditionally on March 1, 1913, whether presently payable or not, and held by a taxpayer prior to March 1, 1913, whether evidenced by writing or not, and all interest which had accrued thereon before that date, do not constitute taxable income, although actually recovered or received subsequent to such date."

Article 331 of those regulations provides in part:

" * * * If a person sues in one year on a pecuniary claim or for property, and money or property is recovered on a judgment therefor in a later year, income is realized in that year, assuming that the money or property would have been income in the earlier year if then received. * * * Bad debts or accounts charged off subsequent to March 1, 1913, because of the fact that they were determined to be worthless, which are subsequently recovered, whether or not by suit, constitute income for the year in which recovered, regardless of the date when the amounts were charged off * * * Such items as claims for compensation under canceled Government contracts constitute income for the year in which they are allowed or their value is otherwise definitely determined."

██ First. Petitioner contends that compensation for an injury is not income and is not taxable as such. We believe the statement to be too broad. Recovery for injury to capital "is never income, no matter when collected." U. S. v. Safety Car Heating & Lighting Co., 297 U.S. 88, 98, 56 S.Ct. 353, 358, 80 L.Ed. 500. But the same case also says (297 U.S. 88, at page 93, 56 S.Ct. 353, 356, 80 L.Ed. 500) that "Congress intended, with exceptions not now important, to lay a tax upon the proceeds of claims or choses in action for the recovery of profits, unless the right to such recovery existed unconditionally on March 1, 1913, the effective date of the first statute under the Sixteenth Amendment."

█ Was petitioner's recovery for injury to capital, which in a sense would be a return of capital, or was it for profits? Respondent determined that the recovery was taxable. The presumption of correctness attending respondent's determination [Buck v. Commissioner (C.C.A.9) 83 F. (2d) 786, and cases cited] carried with it a presumption that the recovery was for profits. The burden was on petitioner to overcome that presumption. Buck v. Commissioner (C.C.A.9), supra. It made no attempt to do so. The only thing touching the point is the stipulated fact that the suits were brought for damages caused by "interference by the United States with sealing operations of" vessels owned by the respective plaintiffs. But recovery for such interference included profits. See Bird v. United States (C.C.A.9) 24 F.(2d) 933, 936; United States v. Laflin (C.C.A. 9) 24 F.(2d) 683, 684. We may assume that interference could also include injury to capital, but after the determination of respondent, the burden was on petitioner to show that the recovery was for injury to capital. Since that burden has not been sustained, we must hold that the recovery was for profits.

In Farmers' & Merchants' Bank v. Commissioner (C.C.A.6) 59 F.(2d) 912, 913, the recovery was for "the injury inflicted to its [taxpayer's] banking business generally." In that case the court said "that the true measure of damages was compensation to be determined by ascertaining how much less valuable its business was by reason of the wrongful acts of the Reserve Bank" from which the recovery was had. In Strother v. Commissioner (C. C.A.4) 55 F.(2d) 626, 632, recovery by a lessee of coal lands, for trespass and removal of coal from such lands was held to be "in effect a return of capital," or, as stated (page 633), for "a loss of capital investment." Both of these cases, so strongly relied on by petitioner, show that damages recovered for injury to capital is not income. The difficulty in considering these two decisions as controlling with respect to the instant case lies in the fact that it does not appear from the opinions in such cases whether or not evidence was received to overcome the presumption of correctness accompanying the Commissioner's determination.

If such evidence was in fact before the court, we are in accord with the doctrine announced therein; if not, then we cannot follow such holding. We assume that there was such evidence, and that the cases are, therefore, not contrary to the view above expressed.

In Central R. Co. v. Commissioner (C. C.A.3) 79 F.(2d) 697, 101 A.L.R. 1448, a recovery which was neither profits nor for

an injury to capital was held not taxable. Such is not the case here.

■ Second. Petitioner quotes a part of Article 331 as follows:

"* * * Bad debts or accounts charged off subsequent to March 1, 1913, because of the fact that they were determined to be worthless, which are subsequently recovered, whether or not by suit, constitute income for the year in which recovered, regardless of the date when the amounts were charged off."·

Petitioner then states:

"Obviously this regulation inferentially provides that bad debts charged off prior to March 1, 1913, did not constitute income if and when recovered; and this has been expressly decided by the Board of Tax Appeals in: Appeal of the National Bank of Baltimore, 3 B.T.A. 1038."

The point is obviously shown to be without merit by petitioner's concession that the "evidence does not show and admittedly is not available to show whether these claims were ever entered as assets in petitioner's destroyed books of account, or if so whether there ever was a charge-off thereof. * * *" Under the presumption of correctness attending the respondent's determination we must presume that there was no charge-off prior to March 1, 1913, because nothing in the record controverts it. We also express our doubt as to whether or not a debt in fact existed which was capable of being charged off.

■ Third. In Article 331 of the regulations quoted, it is provided that:

"* * * If a person sues in one year on a pecuniary claim or for property, and money or property is recovered on a judgment therefor in a later year, income is realized in the later year, assuming that the money or property would have been income in the earlier year if then recovered."

On the basis of this regulation, petitioner contends that the recovery was not income, because the damage resulted, when the interference occurred, which was prior to the Sixteenth Amendment.

In United States v. Safety Car Heating & Lighting Co., supra, an owner of a patent sued for infringment of its patent, and recovered for such infringment occurring both prior and subsequent to March 1, 1913. The portion of the recovery for the infringement prior to March 1, 1913, was held taxable. On the authority of that case, we believe the provision in the regulation quoted to be invalid.

■ Fourth. The principal issue is the time when the income accrued. Before discussing the specific contentions, we examine that question.

It is apparent that the word "accrued" may differ in its meaning, according to its use.

In 1 Bouv.Law Dict. (Rawle's Third Rev.) 111, the word "accrue" is defined as follows:

"To grow to; to be added to; to become a present right or demand * * *

"To rise, to happen, to come to pass. * * *"

In 1 C.J.S., Accrued, p. 761, it is said:

"'Accrued,' as the past tense or preterit of the verb, has been defined as meaning: Acquired; arose, became due; became vested; came into existence; existed; fell due; has arisen; made or executed; matured; occurred; received; vested; was created; was incurred; was in existence. * * *"

As a general statement, the word "arose" seems most expressive. However, such a general definition must be considered in connection with the use of the word. We must, therefore, determine what is meant by the words "income accrued" as used with reference to income tax returns.

The act does not define or provide when income accrues. In United States v. American Can Co., 280 U.S. 412, 417, 50 S.Ct. 177, 179, 74 L.Ed. 518, it is said that the taxpayers kept their books on "the accrual basis—that is, pecuniary obligations payable to or by the company were treated as if discharged when incurred." In Lucas v. North Texas Lumber Co., 281 U.S. 11, 13, 50 S.Ct. 184, 185, 74 L.Ed. 668, we are informed that income does not accrue until there is "unconditional liability" on behalf of a party to pay it to the taxpayer. In Continental Tie & L. Co. v. United States, 286 U.S. 290, 295, 52 S.Ct. 529, 530, 76 L.Ed. 1111, it is indicated that income accrues, when there is a "right to payment." In North American Oil Consol. v. Burnet; 286 U.S. 417, 424, 52 S.Ct. 613, 615, 76 L.Ed. 1197, it is said: "If a taxpayer receives earnings under a claim of right and without restriction as to its disposition; he has received income which he is

required to return, even though it may still be claimed that he is not entitled to retain the money, and even though he may still be adjudged liable to restore its equivalent." In Spring City Foundry Co. v. Commissioner, 292 U.S. 182, 184, 54 S.Ct. 644, 645, 78 L.Ed. 1200, it is said: "Keeping accounts and making returns on the accrual basis, as distinguished from the cash basis, import that it is the right to receive and not the actual receipt that determines the inclusion of the amount in gross income. When the right to receive an amount becomes fixed, the right accrues." In United States v. Safety Car Heating & Lighting Co., supra, 297 U.S. 88, 93, 94, 56 S.Ct. 353, 356, 80 L.Ed. 500, it is indicated that income accrues when the liability is uncontested and certain.

In Lichtenberger-Ferguson Co. v. Welch (C.C.A.9) 54 F.(2d) 570, 572, this court said:

"Under the accrual system of accounting, where an item is definitely ascertained as to its amount, and acknowledged to be due, it has 'accrued.' To quote from the decision of the United States Board of Tax Appeals in the case of Appeal of Clarence Schock, 1 B.T.A. 528. 'Under such system of accounting receipt of income—actual or constructive—is not essential to constitute income within the statuory definition of income. Under an accrual system of accounting one accrues income, he does not receive it. Under the receipts and disbursements method, one receives income and does not accrue it.'"

In addition to these cases are those dealing with the time of accrual of deductions, such as taxes,[1] expenses,[2] losses,[3] and depreciation.[4] In United States v. Woodward, 256 U.S. 632, 635, 41 S.Ct. 615, 616, 65 L.Ed. 1131, it is said that a deduction accrued when it "became due." In United States v. Anderson, 269 U.S. 422, 441, 46 S.Ct. 131, 134, 70 L.Ed. 347, it is held that a deduction accrues when all the events have occurred "which fix the amount of the tax and determine the liability of the taxpayer to pay it." In Ameri-

can National Co. v. United States, 274 U.S. 99, 105, 47 S.Ct. 520, 521, 71 L.Ed. 946, it is indicated that a deduction is accrued when it is "incurred." In United States v. S. S. White Dental Mfg. Co., 274 U.S. 398, 401, 47 S.Ct. 598, 600, 71 L.Ed. 1120, it is said that losses "which are fixed by identifiable events" are accrued. In Weiss v. Wiener, 279 U.S. 333, 335, 49 S.Ct. 337, 73 L.Ed. 720, it is said that a "loss must be actual and present, not merely contemplated as more or less sure to occur in the future." In Lucas v. American Code Co., 280 U.S. 445, 449, 50 S.Ct. 202, 203, 74 L. Ed. 538, 67 A.L.R. 1010, it is said: "Generally speaking, the income tax law is concerned only with realized losses, as with realized gains." See, also, Burnet v. Logan, 283 U.S. 404, 413, 51 S.Ct. 550, 552, 75 L. Ed. 1143; Burnet v. Huff, 288 U.S. 156, 161, 53 S.Ct. 330, 332, 77 L.Ed. 670.

From the above expressions, it is apparent that the general definition of accrued" is limited when taken in connection with income returns. We may conclude that income has not accrued to a taxpayer until there arises to him a fixed or unconditional right to receive it.

So far, only the right to receive has been considered. Must we also consider the prospect of realization on that right by the taxpayer? In other words, when the right to receive arises, should the fact that the right is or is not collectible be taken into consideration in determining whether income has accrued? We believe that no income accrues unless there is a reasonable expectancy that the right will be converted into money or its equivalent. Commissioner v. Brown (C.C.A. 1) 54 F.(2d) 563; Corn Exchange Bank v. United States (C. C.A.2) 37 F.(2d) 34; Automobile Ins. Co. v. Commissioner (C.C.A.2) 72 F.(2d) 265, 267; Commissioner v. Brooklyn R. S. Corp. (C.C.A.2) 79 F.(2d) 833, 834; 1 Paul & Mertens, Law of Federal Income Taxation, 557, § 11.73. See, also, American Cigar Co. v. Commissioner (C.C.A.2) 66 F.(2d) 425, 426, certiorari denied 290 U.S. 699, 54 S.Ct. 209, 78 L.Ed. 601; Helvering v. Russian

1 United States v. Woodward, 256 U. S. 632, 635, 41 S.Ct. 615, 616, 65 L.Ed. 1131; United States v. Anderson, 269 U. S. 422, 441, 46 S.Ct. 131, 134, 70 L.Ed. 347.

2 American National Co. v. United States, 274 U.S. 99, 47 S.Ct. 520, 71 L. Ed. 946.

3 United States v. S. S. White Dental

Mfg. Co., 274 U.S. 398, 47 S.Ct. 598, 71 L.Ed. 1120; Lewellyn v. Electric Reduction Co., 275 U.S. 243, 48 S.Ct. 63, 72 L. Ed. 262; Lucas v. American Code Co., 280 U.S. 445, 50 S.Ct. 202, 74 L.Ed. 538, 67 A.L.R. 1010; Burnet v. Huff, 288 U. S. 156, 53 S.Ct. 330, 77 L.Ed. 670.

4 Weiss v. Wiener, 279 U.S. 333, 49 S.Ct. 337, 73 L.Ed. 720.

Finance & Construction Corp. (C.C.A.2) 77 F.(2d) 324, 327.

The complete definition would therefore seem to be that income accrues to a taxpayer, when there arises to him a fixed or unconditional right to receive it, if there is a reasonable expectancy that the right will be converted into money or its equivalent.

■ Petitioner contends that the income accrued, at the time when the interference by the United States occurred, namely during the years 1891, 1892, and 1893, not on the theory, as we understand it, that the right to receive such income was fixed and unconditional, but on the analogy of Southern Ry. Co. v. Commissioner (C.C.A.4) 74 F.(2d) 887, and Helvering v. Gulf, M. & N. R. Co., 63 App.D.C. 244, 71 F.(2d) 953. In those cases it is held that compensation received by railroads for federal control during the war period accrued proratably over the entire period of control. Those cases are merely examples of the rule. The federal Control Act (Act of March 21, 1918, c. 25 § 1, 40 Stat. 451) fixed the right to receive the income for the entire period of federal control. Southern Ry. Co. v. Commissioner (C.C.A.4) 74 F.(2d) 887, 893, supra; Continental Tie & L. Co. v. United States, 286 U.S. 290, 295, 52 S.Ct. 529, 530, 76 L.Ed. 1111, although decided under a different act is analogous, and is authority for the conclusion reached.

Fifth. With respect to the action in which petitioner recovered judgment, it seems to be conceded that income therefrom accrued to petitioner in the fiscal year prior to the one ending January 31, 1930, unless the right to receive, fixed by the judgment, was conditional. Respondent contends that the right was conditional, because (1) the judgment might be reversed on appeal, and, therefore, it was not unconditional until the time for appeal had expired, which in such case was in the fiscal year ending January 31, 1930; and (2) there was no appropriation to satisfy the judgment until during the fiscal year ending January 31, 1930.

Did the right to receive become fixed or unconditional at the time judgment was entered, or when the time within which an appeal might be taken had expired?

■ It is clear that where a claim exists, no income may accrue, in the absence of a settlement, so long as a judgment has not been entered. Lucas v. American Code Co., supra, 280 U.S. 445, 450, 50 S.Ct. 202, 203, 74 L.Ed. 538, 67 A.L.R. 1010; North American Oil Consol. v. Burnet, supra, 286 U.S. 417, 423, 52 S.Ct. 613, 615, 76 L.Ed. 1197; United States v. Safety Car Heating & Lighting Co. supra, 297 U.S. 88, 99, 56 S.Ct. 353, 358, 80 L.Ed. 500; Commissioner v. Brown (C.C.A.1) 54 F.(2d) 563, 567, supra; Buffalo Union Furnace Co. v. Helvering (C.C.A.2) 72 F.(2d) 399; Commissioner v. Southeastern Express Co. (C.C.A.5) 56 F.(2d) 600; J. N. Pharr & Sons v. Commissioner (C.C.A.5) 56 F.(2d) 832; see, also, Commissioner v. John Thatcher & Son (C.C.A.2) 76 F.(2d) 900. Commissioner v. Highway Trailer Co. (C.C.A. 7) 72 F.(2d) 913, is an example where the same principle is applicable. The same may be said for Board v. Commissioner (C. C.A.6) 51 F.(2d) 73, and Massey v. Commissioner (C.C.A.7) 51 F.(2d) 76. This rule seems to coincide with what is considered to be proper accounting practice. Ronald, Accountant's Handbook (2d Ed.) p. 298.

■ Approaching the other end of the process of litigation, we have for consideration the case where the claim has been reduced to judgment but an appeal has been taken. United States v. Safety Car Heating & Lighting Co., supra, 297 U.S. 88, 99, 56 S.Ct. 353, 358, 80 L.Ed. 500, we believe establishes the rule, namely that no income accrues until the appeal is determined. Compare Commissioner v. Brown (C.C.A.1) supra; Commissioner v. John Thatcher & Son (C.C.A.2) 76 F.(2d) 900, 902, supra; Commissioner v. Southeastern Express Co. (C.C.A.5), supra; J. N. Pharr & Sons v. Commissioner (C.C.A. 5), supra; Central Trust Co. v. Burnet, 60 App.D.C. 4, 45 F.(2d) 922, 923.

■ As to the situation lying between the two mentioned, that is where judgment is entered, and no appeal has been taken, but the time within which an appeal might be taken has not expired, we find no cases directly in point. If appeal is taken, the right is not fixed until determination of the appeal; and if no appeal is taken, the right is fixed. We believe in the latter situation that the right becomes fixed on termination of the appeal time. This seems to coincide with the actual practice of the government, as shown by provisions regarding payment of judgments rendered against the United States. It is usually provided that payment will not be made until the time for appeal has expired. Treasury Regulations 86 and 94, Arts. 322-

325; Act March 4, 1933, § 2, 47 Stat. 1602, 1616; Act Aug. 12, 1935, § 2 (d) 49 Stat. 571, 602.

 With respect to the contention that the absence of an appropriation makes the right conditional, we believe that such fact does not affect the right, but the realization of the right. Even if the judgment remained unpaid, the right would not be impaired. But the absence of an appropriation may be considered in connection with the condition in the general definition hereinabove mentioned, that there must be a reasonable expectancy that the right will be converted into money or its equivalent. Respondent points out that Congress has refused to make an appropriation to satisfy the judgment rendered January 12, 1931, in Dalton v. United States, 71 Ct. Cl. 421 (75 Cong.Rec., Part 2, pp. 1233, 1307; 79 Cong.Rec., Part 10, p. 10816). Respondent says, however, that he "does not wish even to seem to contend that the legislative branch of the Government does not usually appropriate moneys to satisfy judgments rendered against the United States." It is inconceivable that Congress would go through the idle ceremony of enacting a statute authorizing the suits in question, and subsequently render it nugatory by the failure to make an appropriation. We believe that when the appeal time expired, there was a reasonable expectancy that the right would be converted into money.

In conformity with the foregoing, we hold that income from petitioner's claim, on which it recovered judgment, accrued to petitioner during the fiscal year ending January 31, 1930.

Sixth. In the other two actions brought by the surviving trustee, the latter obtained judgment in, and the appeal time expired during, petitioner's fiscal year ending January 31, 1928. The judgments were paid to the trustee in the following fiscal year of petitioner, and petitioner obtained its judgment in the state court for the proceeds, and received the proceeds during its fiscal year ending January 31, 1930, the year in question.

Petitioner contends that at the time the judgments were rendered in the federal court in favor of the trustee, the latter was merely a trustee of a naked trust for petitioner which was immediately executed, and therefore petitioner acquired a fixed right when the judgments were rendered.

The vice in this argument is that it assumes a fact proven only by subsequent events, in that it assumes the trustee held the right in trust for petitioner. But the judgments in the federal court at the expiration of the time for appeal fixed the right of the trustee, and at that time petitioner's right to succeed to the one held by the trustee was not fixed, but was contingent and depended upon the course of later events. Petitioner's right became fixed after the judgment in the state court action was rendered, either at the expiration of the time when appeal might be taken therefrom, or the time when payment was made to petitioner as settlement, whichever was earlier. The right arose to petitioner during its fiscal year ending January 31, 1930.

Affirmed.