GEORGIA SCHOOL-BOOK DEPOSITORY, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 108270.  Promulgated January 19, 1943.

*Leonard Haas, Esq.,* for the petitioner.
*J. Marvin Kelley, Esq.,* for the respondent.

OPINION.

KERN, *Judge:* The question is whether petitioner, which was on an accrual basis, should have accrued certain school book commissions at the time the books were sold by the publishers to the state, or should have returned them as income only when the books were paid for by the state, as petitioner contends.

Petitioner was a broker which received an 8 percent commission on all school books purchased by the State of Georgia through it. For this commission it performed certain services of advantage to both parties, such as executing the contracts of the state board of education with various publishers, taking care of the books as a central depository until final distribution, seeing that enough were on hand to meet the state's demands, distributing them, and collecting the moneys in payment from the state and holding them in trust until paid over to the publishers. It was responsible for the return in salable condition of any books not used. It had no title to the books at any time, and (except in the case of one publisher) posted a bond with each publisher to guarantee performance of its duties. Petitioner also carried on a somewhat similar business as a book broker of college books not on the state list and under these contracts was responsible for the collection of all accounts.

Petitioner did not accrue its commissions on the state books but did accrue its commissions on the college books at the same time that its liability for the books to the publishers was accrued. Under the contracts for state school books it was provided that petitioner should receive its brokerage "at the time of settlement" and this term is explained by the provision that the petitioner shall make quarterly reports "so as to show the exact balance due" the publisher by the petitioner, and shall remit "its *pro rata* share of all cash received from the collection of warrants issued by the State of Georgia for books sold to the state when and as such warrants are received."

The publishers could look for payment from the state, and, consequently, petitioner could look for its commissions only from the "Free Textbook Fund," which was renewed only from the excise laid on beer. During the taxable years 1938 and 1939 this fund was insufficient to pay the petitioner in full. The state, in its accounting, did not treat these large deficits as present liabilities except to the extent that funds were

already on hand to meet them, the remainder being considered an encumbrance on the textbook fund in the next year. The "accounts ripen," the auditor reported, "for payment when and as funds become available in the Textbook Fund."

Petitioner contends, first, that the brokerage was not earned until payment, and, secondly, that there was no reasonable expectancy that payment ever would be made; and for these reasons, it urges its ultimate contention that the commissions here involved were not properly accruable in the respective taxable years.

In so far as appears, all acts which were required of petitioner to earn its brokerage, save one, had been done in the taxable year. It had received the books from the publishers, stored them, and later distributed them to the several schools. All it had not done was to receive the money from the state and pay it out to the publishers. On this account the actual payment of the brokerage may not have been due to petitioner until this money was received, but the right to it had accrued by the performance of its duties. *United States* v. *Anderson*, 269 U. S. 422. It is the *right* to receive money which in accrual accounting justifies the accrual of money receivable and its return as accrued income.

The Supreme Court said in *Spring City Foundry Co.* v. *Commissioner*, 292 U. S. 182 (p. 184):

\* \* \* Keeping accounts and making returns on the accrual basis, as distinguished from the cash basis, import that it is the right to receive and not the actual receipt that determines the inclusion of the amount in gross income. When the right to receive an amount becomes fixed, the right accrues. \* \* \*

The receipt of the money from the state, the deduction of petitioner's commission, and the transmission of the balance to the publishers were the least of its duties and can not be made the criterion of the arisal of the right. Paragraph 9 of the contract assumes that the publisher's right to payment had arisen, for it requires that the quarterly reports which petitioner was to submit should "show the exact balance due the first party by the second party [petitioner] \* \* \*." See *Warren Co.*, 46 B. T. A. 897; *Air-Way Electric Appliance Corporation* v. *Guitteau*, 123 Fed. (2d) 20; and *Ohmer Register Co.* v. *Commissioner*, 131 Fed. (2d) 682.

The case of *Reuben H. Donnelley Corporation*, 22 B. T. A., 175, relied upon by petitioner, may be distinguished on its facts, as it was in *Warren Co., supra.*

We pass, then, to the second question, whether there was a reasonable expectancy that the claim would ever be paid. Where there is a contingency that may preclude ultimate payment, whether it be that the right itself is in litigation or that the debtor is insolvent, the

right need not be accrued when it arises. This rule is founded on the old principle that equity will not require a suitor to do a needless thing. The taxpayer need not accrue a debt if later experience, available at the time that the question is adjudged, confirms a belief reasonably held at the time the debt was due, that it will never be paid. *Corn Exchange Bank* v. *United States*, 37 Fed. (2d) 34 (2d Cir.) ; *H. Liebes & Co.* v. *Commissioner*, 90 Fed. (2d) 932 (9th Cir.), and cases there cited at page 937. On the other hand, it must not be forgotten that the alleviating principle of "reasonable expectancy" is, after all, an exception, and the exception must not be allowed to swallow up the fundamental rule upon which it is engrafted requiring a taxpayer on the accrual basis to accrue his obligations, *Spring City Foundry Co.* v. *Commissioner, supra*. If this were so, the taxpayer might at his own will shift the receipt of income from one year to another as should suit his fancy. Cf. *Clifton Manufacturing Co.*, I. T. C. 71. To allow the exception there must be a definite showing that an unresolved and allegedly intervening legal right makes receipt contingent or that the insolvency of his debtor makes it improbable. Postponement of payment without such accompanying doubts is not enough. In the case of *H. Liebes & Co., supra*, the court stated (at page 936) that "the principal issue is the time when the income accrued." Judgments had been given petitioner in May 1927 and December 1928 by a Federal District Court, pursuant to an act of Congress conferring jurisdiction for the purpose of determining claims of sealers for unlawful seizure of their vessels by the United States in the Bering sea. The Commissioner had included the income in taxpayer's fiscal year ended January 31, 1930, and the Board of Tax Appeals sustained him. The taxpayer had not accrued or returned the adjudged damages as income in its fiscal year 1930, when it was paid and when also the right to appeal expired. The court said (at page 939) in respect of the two issues, legal contingency and reasonable expectancy:

With respect to the contention that the absence of an appropriation makes the right conditional, we believe that such fact does not affect the right, but the realization of the right. Even if the judgment remained unpaid, the right would not be impaired. But the absence of an appropriation may be considered in connection with the condition in the general definition hereinabove mentioned, that there must be a reasonable expectancy that the right will be converted into money or its equivalent. Respondent points out that Congress has refused to make an appropriation to satisfy the judgment rendered January 12, 1931, in *Dalton* v. *United States*, 71 Ct. Cl. 421 (75 Cong. Rec., Part 2, pp. 1233, 1307 ; 79 Cong. Rec., Part 10, p. 10816). Respondent says, however, that he "does not wish even to seem to contend that the legislative branch of the Government does not usually appropriate moneys to satisfy judgments rendered against the United States." It is inconceivable that Congress would go through

the idle ceremony of enacting a statute authorizing the suits in question, and subsequently render it nugatory by the failure to make an appropriation. We believe that when the appeal time expired, there was a reasonable expectancy that the right would be converted into money.

In conformity with the foregoing, we hold that income from petitioner's claim, on which it recovered judgment, accrued to petitioner during the fiscal year ending January 31, 1930.

\* \* \* \* \* \* \*

In *Automobile Insurance Co.* v. *Commissioner*, 72 Fed. (2d) 265 (2d Cir.) the question was whether the taxpayer had the right to accrue on its books and to return as income the entire amount awarded it by the German Mixed Claims Commission in the year of the award, 1928, and this question, depending on whether there was a reasonable expectancy that payment would be made in due course, was resolved as follows (at p. 267):

We believe its [Bureau of Internal Revenue] original view was the correct one, at least to the extent of 80 per cent. of the award. It is true that payment of such awards was not absolutely certain in 1928, for that depended upon the continued willingness and ability of the German government to perform its engagements with the United States and upon the latter's continued co-operation in aiding award claimants to obtain payment; they had no means of enforcing collection for themselves. In this respect the petitioner's position differs from that of a creditor accruing upon his books an ordinary debt payable in the future. But the mere possibility of a change in legislative policy after the enactment of a statute granting compensation to claimants who shall obtain an award thereunder is not enough to prevent the application of the accrual basis of accounting if the facts which determine the claimant's rights are not contingent. *Continental Tie & Lumber Co.* v. *United States*, 286 U. S. 290; *Commissioner* v. *Old Dominion S. S. Co.*, 47 F. (2d) 148 (C. C. A. 2) ; *Uncasville Mfg. Co.* v. *Commissioner*, 55 F. (2d) 893, 895 (C. C. A. 2). In *Spring City Foundry Co.* v. *Commissioner*, 292 U. S. 184 \* \* \*. The petitioner's right to receive the amount of its award became fixed in 1928, and there then existed reasonable ground to believe that it would ultimately be paid. To the extent of 80 per cent. payment was to be expected within six years. Senate Report 273, p. 37, Seventieth Congress, 1st Sess. Committee on Finance, Settlement of War Claims Bill of 1928. To this extent at least it was proper to accrue it on the books in that year. Hence the inclusion of the sums received in 1929 and 1930 was erroneous.

It should be noted that in the *Automobile Insurance Co.* case a lapse of six years was contemplated before payment, whereas here it is not suggested by petitioner that it would have to wait more than a year or so because of the state's diversion of money from the textbook fund, if that long.

Needless to say that there is no analogy between the situation here and that of commissions on life insurance policy renewal premiums (see *Woods* v. *Llewellyn*, 252 Fed. 106), for there is no contingency as to obligation involved here.

Applying these principles to the instant case, we must conclude that, despite the condition of the treasury of the State of Georgia when the

free schoolbook fund was inaugurated and for several years thereafter, there was no reasonable expectation that the sums owed by the state to petitioner's publishers and, consequently, the commissions to petitioner itself, would not ultimately be paid. It would naturally take a few years to establish in full working order a system of such magnitude, but a comparison of the two years before us shows that Georgia was gradually reducing its schoolbook obligations. Georgia is a state possessing great resources and a fine record of fiscal probity, and undoubtedly it can and will meet its obligations. The fact that petitioner, on behalf of its principals, continued to sell and deliver school books to the state indicates that there was no serious doubt as to the ultimate collection of the accounts here involved.

We conclude, therefore, that petitioner's commissions on all books purchased by the state through it in the taxable years should have been accrued and returned as income in those years.

*Judgment will be entered for the respondent.*