**JONES LUMBER CO., Inc., Petitioner-Appellant,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.**

**RACH, INC., Petitioner-Appellant,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.**

**Nos. 18177, 18178.**

United States Court of Appeals Sixth Circuit.

Dec. 9, 1968.

W. W. Berry, Nashville, Tenn., for petitioners; Bass, Berry & Sims, Nashville, Tenn., of counsel.

Stanley L. Ruby, Tax Division, Dept. of Justice, Washington, D. C., for respondent; Mitchell Rogovin, Asst. Atty. Gen., Lee A. Jackson, Harry Baum, Attys., Dept. of Justice, Washington, D. C., on brief.

Before WEICK, Chief Judge, COMBS, Circuit Judge, and CECIL, Senior Circuit Judge.

COMBS, Circuit Judge.

Taxpayers, Jones Lumber Co., Inc., and Rach, Inc., seek review of a decision of the Tax Court approving income tax deficiencies against them for the years 1960–1962. Taxpayers were engaged in the sale and construction on lots owned by the purchaser of standardized semi-finished houses commonly referred to as "shell" houses. Sales were frequently made by taking notes secured by mortgages on the purchaser's land where the house was to be constructed. To facilitate the financing of the sales, taxpayers maintained arrangements with several lending institutions to buy first mortgage notes taken by the taxpayers when a house was sold on credit. Although these lending institutions differed as to the period of time over which they would extend credit, it was the policy of the taxpayers to afford all customers an opportunity to make payments over the maximum period then being accepted by a company with which the taxpayers dealt. Thus, when dealing with a financing company willing to extend credit only for a short period, it was necessary to take second mortgage notes for the years of payment which the particular financing company would not include in the first mortgage note. The first mortgage notes were then sold to the institution previously agreeing to discount them but, at least during the years here in question, the second mortgage notes were not sold by the txpayers.

Payments on the first mortgage notes included both principal and interest and were made in monthly installments over

periods varying from six to fourteen years, depending on the taxable year and the financing company involved. No payments were due or payable on a second mortgage note until all payments on the first mortgage note had fully matured. The cash received from the sale of a first mortgage note was sufficient to result in a profit but less than the full cash selling price of the house.

The taxpayers had elected to use the accrual method for payment of taxes. They included as income the amounts received from discounting the first mortgage notes, but maintain that the second mortgage notes were not accruable as income for the taxable years in question. The Commissioner decided otherwise and made the deficiency assessments which are the subject of this appeal. Taxpayers contend their position can be supported on either or both of two grounds: (1) they are entitled to report the sales in the manner provided for reporting deferred payment sales of realty not on the installment method as outlined in Treasury Regulation § 1.453–6(a);[1] (2) the second mortgage notes are not accruable as income in the year of receipt because of a reasonable doubt as to their collectibility.

■ The regulation relied on by taxpayers is applicable by its terms only to deferred payment sales of *real property*, and has been held not to extend to sales of personal property by an accrual basis taxpayer. George L. Castner, 30 T.C.

1061 (1958); 2 Mertens, Law of Federal Income Taxation, § 15.14. In W. W. Pope v. Commissioner, T.C. Memo 1965–211, the Tax Court held that sales identical to those involved here constituted sales of personal property. The taxpayers not only fail to cite any authority to refute the rationale of *Pope,* but, in effect, admit that the sales involved here were sales of personal property. Thus, taxpayers' reliance on this regulation is misplaced.

■ The right to receive as distinguished from the actual receipt determines the accrual of income unless, at the time the right arises, there exists a reasonable doubt as to its collectibility. Corn Exchange Bank v. United States, 37 F.2d 34 (2nd Cir. 1930); H. Liebes & Co. v. Commissioner, 90 F.2d 932 (9th Cir. 1937). In all of the cases cited in briefs and those found by our research which have held an item non-accruable because of doubtful collectibility, substantial evidence had been presented as to the financial instability or even the insolvency of the debtor. In fact, it has been said that to prevent accrual because of doubtful collectibility there must be a definite showing that the insolvency of the debtor makes receipt improbable. Georgia School-Book Depository, Inc. v. Commissioner, 1 T.C. 463 (1943). See Clifton Manuf. Co. v. Commissioner, 137 F.2d 290, 150 A.L.R. 749 (4th Cir. 1943). It is not necessary for us now to decide whether the rule goes so far.

---

1. § 1.453–6 Deferred-payment sale of real property not on installment method

(a) Value of obligations. (1) In transactions included in paragraph (b) (2) of § 1.453–4, that is, sales of real property involving deferred payments in which the payments received during the year of sale exceed 30 percent of the selling price, the obligations of the purchaser received by the vendor are to be considered as an amount realized to the extent of their fair market value in ascertaining the profit or loss from the transaction. Such obligations, however, are not considered in determining whether the payments during the year of sale exceed 30 percent of the selling price.

(2) If the obligations received by the vendor have no fair market value, the payments in cash or other property having a fair market value shall be applied against and reduce the basis of the property sold and, if in excess of such basis, shall be taxable to the extent of the excess. Gain or loss is realized when the obligations are disposed of or satisfied, the amount thereof being the difference between the reduced basis as provided in the preceding sentence and the amount realized therefor. Only in rare and extraordinary cases does property have no fair market value.

It was established by the taxpayers that the second mortgage notes were not assignable and had no ascertainable market value in the opinion of witnesses representing various lending institutions. Although market value and collectibility are related, they are not synonomous concepts. Little or no evidence was introduced on the financial condition or insolvency of the debtors, the course of dealings between seller and purchaser, or the irregularity of payments. It is true, as pointed out by taxpayers, that the houses sold were relatively inexpensive and the purchasers were usually persons with low incomes. But, this alone is not proof the purchasers were financially irresponsible and does not establish reasonable doubt as to the collectibility of the notes. We conclude, therefore, that the taxpayers failed to carry their burden of proof on this issue. See the opinion of the Tax Court, reported as T.C. Memo 1967–81.

Judgment affirmed.