**AUTOMATIC ENTERPRISES, INC., Appellant,**

v.

**DISTRICT OF COLUMBIA, Appellee.**

No. 82–311.

District of Columbia Court of Appeals.

Argued Jan. 18, 1983.

Decided Aug. 10, 1983.

Werner Strupp, Washington, D.C., for appellant.

Richard G. Amato, Asst. Corp. Counsel, Washington, D.C., with whom Judith W. Rogers, Corp. Counsel, Charles L. Reischel, Deputy Corp. Counsel, and James E. Lemert and Richard L. Aguglia, Asst. Corp. Counsel, Washington, D.C., were on the brief, for appellee.

Before TERRY, Associate Judge, REILLY, Chief Judge, Retired, and KELLY, Associate Judge, Retired.[*]

TERRY, Associate Judge:

This is an appeal from a decision of the Tax Division of the Superior Court which upheld the imposition of deficiency assessments of corporation franchise taxes upon appellant for the tax years 1976 and 1977. The Department of Finance and Revenue had refused to accept appellant's peculiar method of accounting, which selectively incorporated certain features of both the accrual and the cash methods. Appellant contends that the trial court erred as a matter of law in rejecting its hybrid accounting method and that the court abused its discretion in denying appellant's post-trial motion for "further hearing and reconsideration." We disagree with both contentions and affirm the judgment of the trial court.

I

Appellant is a District of Columbia corporation engaged in the business of selling books and similar merchandise to other corporations for resale. While the record is not entirely clear, most, if not all, of the companies to which appellant sold its goods were affiliated with appellant through some form of cross-ownership. Appellant asserts that these related companies were all in poor financial condition which required it to make substantial loans to ensure their continued solvency. Appellant further maintains that the precarious financial condition of these companies was the motivating factor in appellant's decision to consider its sales to them to have taken place only when payment was actually received. According to appellant, the collectibility of these accounts receivable was so doubtful that it would have been inaccurate to treat them as income for tax purposes.

It is undisputed that appellant's method of accounting was highly unorthodox; appellant's own accountant so testified at tri-

---

[*] Judge Kelly was an Associate Judge of the court at the time of argument. Her status changed to Associate Judge, Retired, on March 31, 1983.

al. According to the accountant, the only industry within his knowledge which employed appellant's method of accounting was the newsletter and subscription industry, which has been specifically exempted by Congress from prescribed methods of reporting income. *See* I.R.C. § 455(e) (1976).

The irregularity of appellant's accounting system is underscored by the fact that United States Treasury Regulations require all businesses using inventories, such as appellant, to employ the accrual method of accounting. According to the regulations:

> In any case in which it is necessary to use an inventory the accrual method of accounting must be used with regard to purchases and sales unless otherwise authorized [by the Commissioner]. . . .

Treas.Reg. § 1.446–1(c)(2)(i) (1983). Although these regulations are not binding on District of Columbia taxpayers for purposes of their local taxes, they do reflect the deviation between appellant's accounting method and accepted practice.

In its findings of fact and conclusions of law, the trial court ruled that the Department of Finance and Revenue had properly rejected appellant's 1976 and 1977 tax returns, which the court characterized as "convoluted." The court discounted appellant's argument that its hybrid accounting method was appropriate, given the uncertain nature of its accounts receivable: "[T]he Court doubts that petitioner would have made sales to corporations knowing that the chances of obtaining payment from them [were] doubtful." The court also commented that if appellant had had a sincere doubt about the collectibility of these accounts, the proper approach would have been to increase its bad debt allowance by the appropriate amount. In conclusion, the court held that "[t]he Department of Finance and Revenue properly rejected petitioner's method of accounting because it

does not reflect income in accordance with the District's taxing statutes or in accordance with recognized principles of accounting."

## II

The Department of Finance and Revenue is authorized by statute to reject any tax returns which do not clearly reflect income. The pertinent section of the 1973 Code provided in part:

> The net income shall be computed upon the basis of the taxpayer's annual accounting period (fiscal year or calendar year, as the case may be) in accordance with the method of accounting regularly employed in keeping the books of such taxpayer; but if no such method of accounting has been so employed, or if the method employed does not clearly reflect the income, the computation shall be made in accordance with such method as in the opinion of the Assessor does clearly reflect the income.

D.C.Code § 47–1561 (1973).[1] In addition, D.C.Code § 47–1561e (1973) provided:

> Notwithstanding any other provisions of this subchapter, the Assessor is hereby authorized to reject any return of income reported on a cash basis where, in his opinion, the net income of the taxpayer is not properly reflected and cannot be determined on such basis, and to require the return to be filed on such a basis as in his opinion will properly reflect the net income of the taxpayer.[2]

■ It is well established that "under an accrual method, income is to be included for the taxable year when all the events have occurred which fix the right to receive such income and the amount thereof can be determined with reasonable accuracy." Treas.Reg. § 1.451–1(c)(1)(ii) (1983); *see Spring City Foundry Co. v. Commissioner,* 292 U.S. 182, 184–185, 54 S.Ct. 644, 645, 78 L.Ed. 1200 (1934). A two-part test exists,

---

1. D.C.Code § 47–1561 (1973), which governs this case, is substantially the same as D.C.Code § 47–1804.1 (1981).

2. D.C.Code § 47–1561e (1973), which governs this case, is substantially the same as D.C.Code § 47–1804.6 (1981).

therefore, to determine whether an item is includible in gross income. First, the right to receive the income must be fixed; second, the amount of income must be determinable with reasonable accuracy. In the instant case there is no dispute about the second element. The amount of money owed to appellant has already been determined by the District, and that determination is not challenged here. The issue for us to decide is whether appellant's right to receive that income was sufficiently fixed so as to require its inclusion in accounts receivable in the calculation of appellant's gross income. We hold that it was.

In *H. Liebes & Co. v. Commissioner,* 90 F.2d 932 (9th Cir.1937), the Ninth Circuit encountered an accounting problem similar to the one in this case.[3] In *Liebes* the court acknowledged the established rule "that income has not accrued to a taxpayer until there arises to him a fixed or unconditional right to receive it." *Id.* at 937. It also noted an exception, however, to the "fixed or unconditional right" standard exempting a specific item from income when there is no "reasonable expectancy" that the item of income will ever be collected. *Id.* This "reasonable expectancy" exception was further developed in *Georgia Schoolbook Depository, Inc. v. Commissioner,* 1 T.C. 463 (1943):

> Where there is a contingency that may preclude ultimate payment, whether it be that the right itself is in litigation or that the debtor is insolvent, the right need not be accrued when it arises .... The taxpayer need not accrue a debt if later experience, available at the time that the question is adjudged, confirms a belief reasonably held at the time the debt was due, that it will never be paid. On the other hand, it must not be forgotten that the alleviating principle of "reasonable expectancy" is after all, an exception, and the exception must not be allowed to swallow up the fundamental rule upon which it is engrafted requiring a taxpay-

er on the accrual basis to accrue his obligations. If this were so, the taxpayer might at his own will drift the receipt of income from one year to another, as should suit his fancy. *To allow the exception there must be a definite showing that an unresolved and allegedly intervening right makes receipt contingent.... Postponement of payment without such accompanying doubts is not enough.*

*Id.* at 469 (emphasis added).

An accrual method taxpayer who wishes to exclude an item from gross income must present substantial evidence that there is no reasonable expectancy of collection. *Stephens Marine, Inc. v. Commissioner,* 430 F.2d 679, 684–685 (9th Cir. 1970); *Flamingo Resort, Inc. v. United States,* 485 F.Supp. 926, 933 (D.Nev.1980), aff'd, 664 F.2d 1387, 1390 (9th Cir.1982); *Georgia Schoolbook Depository, Inc., supra.* As the District Court said in *Flamingo Resort,* "it is clear that the uncertainty as to collection must be substantial and not simply technical. The exception is strictly construed." 485 F.Supp. at 933 (citation omitted).

The burden of proving that an assessed tax deficiency is incorrect lies with the taxpayer. *Welch v. Helvering,* 290 U.S. 111, 54 S.Ct. 8, 78 L.Ed. 212 (1933); *Petworth Pharmacy, Inc. v. District of Columbia,* 335 A.2d 256, 258 (D.C.1975); Super. Ct.Tax R. 11(d). This is particularly true in cases such as this one, in which the exception on which appellant relies (that of doubtful collectibility) is strictly construed and requires a showing of substantial inability to collect the debt owed. *Flamingo Resort, supra.* Appellant has failed to meet its burden. It has made no showing that its debtor companies were insolvent, that they had defaulted upon other debts, or that they were unable to meet their financial obligations as they came due. Accordingly, the trial court was correct to conclude as it did that appellant's right to receive the

---

**3.** In *Liebes* the court was faced with the question of when certain items of income (money) judgments in several law suits) had accrued so as to require inclusion in gross income.

income was sufficiently fixed so as to require its inclusion in gross income.[4]

■ The decision of the trial court is consistent with established case law as well as with generally accepted methods of accounting. In *Hygienic Products Co. v. Commissioner,* 111 F.2d 330, 331 (6th Cir. 1940), the Sixth Circuit declared:

> Petitioner characterizes its system of accounting as "hybrid." No such system, however, is recognized by the [Revenue Act of 1934]; unless the system conforms to one method, it does not reflect income in accordance with the Act, and the Commissioner is empowered to make such corrections as are necessary to make the return accurately reflect income. [Citations omitted.][5]

Because appellant was an accrual method taxpayer, the trial court was correct in concluding that appellant's hybrid method of accounting did not accurately reflect income. To obtain beneficial tax treatment of any accounts receivable which it considered questionable, appellant should have included them in gross income. Appellant then could have either claimed a deduction for each bad debt or increased its reserve for bad debts in the year in which the debt became wholly or partially worthless. *See* D.C.Code § 47–1803.3(a)(5) (1981). Appellant's own expert admitted at trial that this could have been done, and the trial court made note of this point in its conclusions of law.

We therefore conclude that appellant used an impermissible and unsatisfactory accounting method which failed to reflect income accurately. Accordingly, the trial court did not err in upholding the rejection of appellant's 1976 and 1977 tax returns.

### III

■ After the trial court issued its findings of fact and conclusions of law, appellant moved for a further hearing to establish its right to a retroactive bad debt allowance for the tax years in question. The trial court denied the motion. Appellant contends that this denial was an abuse of the court's discretion.

As the District correctly points out, appellant had three years from the time of payment to file an amended tax return with the Department of Finance and Revenue, but it failed to do so.[6] Appellant had no right to amend any return after the three-year period had expired. Accordingly, appellant's 1981 motion to reopen its 1976 and 1977 tax returns to include a bad debt allowance was properly denied as untimely.[7]

*Affirmed.*

---

4. The issue of the uncollectibility of a business debt is a factual one, 2 J. MERTENS, LAW OF FEDERAL INCOME TAXATION § 12.75 (1982), which the trial court has already resolved against appellant. Accordingly, this court's review is limited to whether the trial court's finding was clearly erroneous or without evidence to support it. *District of Columbia v. National Bank of Washington,* 431 A.2d 1, 3 (D.C.1981); D.C. Code § 17–305(a) (1981). In light of our discussion, we cannot say that the trial court erred in its finding.

5. The statutory provision construed by the court in *Hygienic Products,* 26 U.S.C. § 41 (1934), is substantially the same as D.C.Code § 47–1561 (1973) and D.C.Code § 47–1804.1 (1981).

6. D.C.Code § 47–1586j(a) (1973) (now D.C. Code § 47–1812.11(a)(2) (1981)) provides in pertinent part:

> No such credit or refund shall be allowed after three years from the time the tax was paid unless before the expiration of such period a claim therefor is filed by the taxpayer, and no tax or part thereof which the Assessor may determine to have been an overpayment shall be refunded after the period prescribed therefor in the Act appropriating the funds from which such refund would otherwise be made.

Appellant failed to file a claim for a credit or refund or to amend its 1976 and 1977 returns within the three-year period.

7. Of course, appellant is not precluded from claiming a bad debt deduction in the year in which the debt becomes wholly or partially worthless. *See* D.C.Code § 47–1803.3(a)(5) (1981).