Paul H. and Doris E. TRAVIS,
Petitioners-Respondents,

v.

COMMISSIONER OF INTERNAL REV-
ENUE, Respondent-Petitioner.

Nos. 18180–18181.

United States Court of Appeals
Sixth Circuit.

Feb. 7, 1969.

E. James Gamble, Detroit, Mich. (Paul R. Trigg, Jr., Fred J. Fechheimer, Detroit, Mich., on the brief), for Travis; Dykema, Wheat, Spencer, Goodnow & Trigg, Detroit, Mich., of counsel.

Louis M. Kauder, Dept. of Justice, Washington, D. C. (Mitchell Rogovin, Asst. Atty. Gen., Meyer Rothwacks, Harry Baum, Attys., Dept. of Justice, Washington, D. C., on the brief), for Commissioner.

Before PHILLIPS, EDWARDS and McCREE, Circuit Judges.

EDWARDS, Circuit Judge.

Petitioners seek our review of a deficiency judgment entered by the Tax Court after respondent redetermined their tax liability for the year 1958. The Tax Court ruled upon nine issues in its opinion (47 T.C. 502) (1967). The taxpayers originally sought this court's review as to eight of these issues and respondent counter-petitioned as to the ninth. Prior to hearing, however, petitioners and respondent entered into stipulations by which they agreed to reversal of the Tax Court judgment as to petitioners' second and fourth issues and respondent's single issue, with petitioners agreeing to withdraw issues six, seven and eight from their appeal.

Petitioners state the remaining issues as follows:

"I. Did a corporation that entered into executory contracts to teach lessons to its students in exchange for cash to be paid in installments have a legally enforceable right under Michigan law to receive the full amount of each installment when it became due if the corporation had not yet performed the services for which the installment was the consideration?

"II. Did a method of accounting that had been imposed by the respondent upon a predecessor partnership that owned and operated the same business as that owned and operated by the corporation, and that had been upheld by the Tax Court when challenged by one of the partners, clearly reflect the income of the corporation?

"III. If the installment payments under the student enrollment agreements are to be included in income, is the corporation entitled to a deduction for a reasonable addition to its reserve for bad debts in 1958 for more than $16,483.54?"

The taxpayers here are the owners of a corporation which operates the Arthur Murray Studios of Michigan. When the corporation was formed in 1958 the Commissioner required a change in the form of accounting from that previously employed by the taxpayers operating as a proprietorship, contending that the system employed by the taxpayers was essentially a cash basis as to income, and an accrual basis as to expense. The Commissioner insisted that the corporation [1] was required to accrue as income amounts actually due on installment contracts prior to December 31, 1958, regardless of whether the services had been rendered or the amounts had actually been paid.

The Commissioner and the Tax Court relied directly upon the language of the United States Supreme Court in an earlier Arthur Murray dance studio case:

"If these payments are includible in the year of receipt because their allocation to a later year does not clearly reflect income, the contract installments are likewise includible in gross income, as the United States now claims, in the year they become due

---

1. This suit is filed on behalf of the individual taxpayer, who owns the corporation, (and her husband with whom she filed a joint return) because the corporation elected treatment under Subchapter S.Int.Rev.Code of 1954 §§ 1372–1378.

and payable. For an accrual basis taxpayer 'it is the *right* to receive and not the actual receipt that determines the inclusion of the amount in gross income,' Spring City Foundry Co. v. Commissioner of Internal Revenue, 292 U.S. 182, 184, 54 S.Ct. 644, 645, 78 L.Ed. 1200; Commissioner of Internal Revenue v. Hansen, 360 U.S. 446, 79 S.Ct. 1270, 3 L.Ed.2d 1360 and here the right to receive these installments had become fixed at least at the time they were due and payable." Schlude v. Commissioner of Internal Revenue, 372 U.S. 128, 136–137, 83 S.Ct. 601, 606, 9 L.Ed.2d 633 (1963). (Emphasis in original.)

Petitioners, however, contend with great vigor that under Michigan law this is an unjust reassessment because Michigan case law does not allow recovery of amounts due on executory contracts such as these for services which have not been rendered, and only allows suit for damage for breach. Mount Ida School for Girls v. Rood, 253 Mich. 482, 235 N.W. 227, 74 A.L.R. 1325 (1931); Walton School of Commerce v. Stroud, 248 Mich. 85, 226 N.W. 883 (1929); International Text-Book Co. v. Marvin, 166 Mich. 660, 132 N.W. 437 (1911).

The Commissioner argues that federal tax liability is governed by federal law unless federal law specifically or by implication refers to state law. Goodwin's Estate v. Commissioner of Internal Revenue, 201 F.2d 576 (6th Cir. 1953). Petitioners, however, contend that the "right to receive" income referred to in the *Schlude* case must mean a *legally enforceable* right to receive such income. Since enforcement of such a contract must be had under state law, petitioners argue that, by necessary implication, the Michigan cases cited above are controlling.

Respondent Commissioner answers by again citing *Schlude* as directly in point, since essentially the same state contract

law theory was argued to the Supreme Court on that appeal.[2]

Taxpayers' brief in the Supreme Court in the *Schlude* case said in part:

"The law of Nebraska, Iowa and South Dakota follows the general rule that a party seeking to recover on an executory contract before performance is rendered is only entitled to recover damages for the breach which is measured by the loss of profits. International Textbook Co. v. Martin (1908), 82 Neb. 403, 117 N.W. 994; King Features Syndicate [et al.] v. Courrier (1950), 241 Iowa 870, 43 N.W.2d 718 [41 A.L.R.2d 467]; South Dakota Code, Sec. 37–1801 (1960 Supp.). The foregoing authorities demonstrate that as a matter of general law the Tax Court was in error in holding that when the contracts were entered into the amounts due thereunder were fixed and the students were liable to pay." Brief for Appellant at 18, Schlude v. Commissioner of Internal Revenue, 372 U.S. 128, 83 S.Ct. 601, 9 L.Ed.2d 633 (1963). (Footnote omitted.)

To this petitioners respond by arguing that nonetheless the question is still open to us because the state law issue was not properly raised before the Supreme Court, not having been either briefed or argued in the *Schlude* case at the District or Court of Appeals level.

The quotation from the *Schlude* case upon which the government relies so strongly seems difficult for us to ignore, whether it be termed binding in this case or not. But in either event, it is not essential to our decision.

We do not believe that when the Supreme Court spoke of "the right to receive income" in an accrual method of accounting income tax case that it intended to equate that phrase in all respects with "a legally enforceable right to receive income." In Commissioner of Internal Revenue v. Hansen, 360 U.S. 446, 79 S. Ct. 1270, 3 L.Ed.2d 1360 (1959), the

---

2. The Commissioner also points to factual distinctions between the accounts involved herein and the contracts in the Michigan

cases where the opposite party had either breached the contract or repudiated the liability before suit.

Supreme Court specifically rejected a contention that a "presently enforceable right to recover" was essential to require inclusion of income. The Court said:

"But the question is not whether the taxpayers can presently recover their reserves, for, as stated, it is the time of acquisition of the *fixed right to receive* the reserves and not the time of their *actual receipt* that determines whether or not the reserves have accrued and are taxable." Commissioner of Internal Revenue v. Hansen, supra at 464, 79 S.Ct. at 1280. (Emphasis in original.)

We recognize, of course, that this language taken in context might be argued as expressing rejection primarily of the term "presently." But we regard it as significant also that the Court having before it the term "enforceable right to recover" did not adopt such language and did emphasize the term "fixed right to receive."

There are so many practical problems which would be engendered in tax cases if the term "legally enforceable" was employed that we tend to construe the choice of language referred to above as significant.

We agree with the United States Court of Appeals for the District of Columbia which has said on this same topic:

"The correct answer, as we think, depends not so much, as appellants urge, upon the legal right to enforce collections as upon the existing probability of its being received." Barker v. Magruder, 68 App.D.C. 211, 95 F.2d 122, 123 (1938).

*See also* Corn Exchange Bank v. United States, 37 F.2d 34 (2d Cir. 1930). *But*

*see* I–1 Cum.Bul. 87, 89 (1922) (solicitor's law opinion); Holland, Accrual Problems In Tax Accounting, 48 Mich.L. Rev. 149, 158 (1949).

■ This court, in a quite different income tax case, set this standard for interpretation of relevant facts, "the transaction must be viewed as a whole and in the light of realism and practicality." Commissioner of Internal Revenue v. Segall, 114 F.2d 706, 709 (6th Cir.) cert. denied, 313 U.S. 562, 61 S.Ct. 838, 85 L.Ed. 1522 (1940).

■ Appellants wrote these contracts for dance lessons so as to convince their patrons that they assumed a binding obligation for the payment, whether the lesson had ever been given or not.[3] This record indicates that many such payments were made in accord with the terms of the contracts. It appears, in fact, that appellants rarely had recourse to litigation. We believe that under the language of the contracts the right to income became fixed for accounting purposes under the accrual method when the payments became due and payable under the terms of the contract.[4] Failure to include such accounts as income when they were due and payable meant that appellants' tax return failed clearly to reflect income.

■■ Appellants' second stated issue is, we believe, actually included in the first. Petitioners have every right to argue the Commissioner's acceptance of or failure to object to their prior accounting method as some evidence that it served clearly to reflect income. But neither acceptance of prior accounting or failure to object thereto represents a waiver of such objections or acts to estop correction of a mistake of law.

3. The student enrollment agreement provided inter alia: "My failure to take lessons during the period indicated above shall not relieve me of my obligations under this contract," and "it is agreed that this contract may not be canceled by me and that under no circumstances will you be required to make any refund to me." In addition, the phrase "non-can-

cellable contract" was displayed in bold letters above the space provided for the student's signature.

4. Appellants could, of course, escape the uncertainty complained of by having the contract payment become due only when the service had been rendered. Or in the alternative, they could elect a cash accounting method.

Automobile Club v. Commissioner of Internal Revenue, 353 U.S. 180, 77 S.Ct. 707, 1 L.Ed.2d 746 (1957). The basic question on this point is not what the Commissioner did previously, but whether or not petitioners' accounting method clearly reflected income. Commissioner of Internal Revenue v. Hansen, 360 U.S. 446, 467, 79 S.Ct. 1270, 3 L.Ed.2d 1360 (1959). When we answer that question in the negative, the Commissioner's right to insist on correction follows. The Commissioner has broad power to require revision of an accounting method which does not clearly reflect income. Int.Rev.Code of 1954 § 446(b); and American Automobile Ass'n v. United States, 367 U.S. 687, 81 S.Ct. 1727, 6 L.Ed.2d 1109 (1961).

The third issue is closely related to those previously discussed. Petitioners insist if they are required to record as income all of the contract installments due and payable, that under the realities of Michigan law and their own business experiences, they should be entitled to a realistic bad debt reserve. We find neither logical nor legal objection to this contention. The Internal Revenue Code provides:

"In lieu of any deduction under subsection (a), there shall be allowed (in the discretion of the Secretary or his delegate) a deduction for a reasonable addition to a reserve for bad debts." Int.Rev.Code of 1954 § 166(c).

The Commissioner's brief recites the factual background on this issue thus:

"It was stipulated below that of the $79,261.50 due and payable as the end of 1958 under student enrollment agreements, the corporation ultimately collected only $31,159.74. The corporation in later years rewrote some of the contracts for a total reduction in face amounts of $31,618.22. The remaining $16,483.54 was ultimately determined to be uncollectible. The Tax Court allowed the corporation a deduction for an addition to its reserve for bad debts for the $16,483.54 proven to have been uncollectible but denied a bad debt deduction for the $31,618.22

in reductions agreed to by the corporation and its students."

On this factual record the Commissioner's and the Tax Court's allowance of a $16,483.54 bad debt reserve is unrealistic and "clearly erroneous." Commissioner of Internal Revenue v. Duberstein, 363 U.S. 278, 80 S.Ct. 1190, 4 L.Ed.2d 1218 (1960). While a bad debt reserve should not be determined by hindsight, the error herein is a conceptual one.

We believe that the $31,618.22 which is stipulated not to have been collected is indicative of collection problems with this type of contract and this type of business. The Tax Court in effect treated petitioners' established practice of renegotiating these contracts downward as purely voluntary disposition of income. As we have noted, Michigan law does not give petitioners a clear legally enforceable right to judgment for the face value of these installments, and there may be real issues of collectibility.

In dealing with a somewhat similar problem, the Ninth Circuit said:

"It is clear that debts may not be charged off against the reserve until they have become worthless. It does not follow, however, that the circumstances particularly affecting a specific debt must be completely disregarded in determining the reasonableness of additions to reserve. Since the reserve normally is dealing with unknown factors bearing upon unidentifiable accounts, its reasonable extent is ordinarily calculated by resort to past experience with such accounts in the composite. But the fact that experience is the guide in dealing with unknown factors and unidentifiable accounts should not require us to reject the more accurate guidance of known factors bearing upon identifiable accounts when such information is available. The extent of a reasonable reserve should depend upon an adjustment between known circumstances and experience." Calavo, Inc.

v. Commissioner of Internal Revenue, 304 F.2d 650, 654 (9th Cir. 1962).

Under the total circumstances of this case we believe petitioners' request for remand of this issue for further proofs is amply justified.

The decision of the Tax Court is affirmed in part and reversed in part as noted above. The judgment is vacated and the case is remanded for entry of the stipulations previously referred to and for further proceedings to redetermine a reasonable addition to the reserve for bad debts as previously discussed.