**AMERICAN NATIONAL BANK OF AUSTIN, Plaintiff-Appellant,**

v.

**UNITED STATES of America, Defendant-Appellee.**

No. 73–3981.

United States Court of Appeals, Fifth Circuit.

July 10, 1974.

Rehearing and Rehearing En Banc Denied Oct. 21, 1974.

---

Buford P. Berry, J. W. Bullion, Joe A. Rudberg, Dallas, Tex., Sander W. Shapiro, Austin, Tex., for plaintiff-appellant.

Scott P. Crampton, Asst. Atty. Gen., Jerome Fink, Chief, Tax Refund Sec. #2, Meyer Rothwacks, Chief, App. Sec., Tax Div., Dept. of Justice, Washington, D. C., William Guild, Charles G. Barnett, Michael D. Cropper, Tax Div., Dept. of Justice, Dallas, Tex., Louis A. Bradbury, Atty., Tax Div., Dept. of Justice, Washington, D. C., William S. Sessions, U. S.

Atty., Hugh P. Shovlin, Asst. U. S Atty., San Antonio, Tex., for defendant-appellee.

Before BELL, SIMPSON and INGRAHAM, Circuit Judges.

PER CURIAM:

In the first appeal in this case, American National Bank of Austin v. United States, 421 F.2d 442 (5th Cir., 1970), we held that taxpayer's role in its municipal bond business was not as an owner of the bonds it handled, but was for tax purposes properly characterized as that of a lender. Absent ownership of the bonds taxpayer was not entitled to exclude the interest income it received on the bonds from its gross income under § 103(a)(1) of the Internal Revenue Code of 1954. Taxpayer thus lost in its attempt to obtain a refund of $778,031.77 for the tax years 1962, 1963 and 1964.

The instant appeal follows our remand, the purpose of which was to determine whether taxpayer was entitled to an addition to its bad debt reserve as a consequence of our decision. Because taxpayer accounts for its bad debt losses on loans by the reserve method, § 166(a) and (c) of the Code, its position is that our decision changes the basis on which its reserve is computed under Mim. 6209, 1947–2 Cum.Bull. 26,[1] thus producing an increase in the allowable addition to the reserve and a corresponding increased deduction on its income tax return. The district court held for the government and we affirm that decision.

Using the Mim. 6209 formula and based on its outstanding loans exclusive

1. Mim. 6209 and its progeny (see 5 J. Mertens, Law of Federal Income Taxation, § 30.75 (1969)) permit a bank on the reserve method to use its historic bad debt loss experience to determine the amount of a reasonable addition to its bad debt reserve. In Union National Bank of Youngstown v. United States, 237 F.Supp. 753, 758 (N.D. Ohio, 1965), the court outlined the procedure as follows:

"(a) The bank computes its bad debt losses for each of the preceding twenty years (including the current taxable year) and

applies this to the total loans outstanding at the end of each year.
(b) The twenty loss ratios so obtained are averaged to obtain the average loss ratio. This ratio is known as the 'average experience factor.'
(c) The bank then adds to its reserves an amount equal to the average loss ratio times the loans outstanding at the end of the current year provided,
(d) That the amount added to the reserve cannot bring the total reserve to more than three times the amount computed in (c) above."

of bonds, the taxpayer had maximum possible deductions of $217,122.45 for 1962 and $270,789.25 for 1963, the tax years currently in issue. "For two basic reasons plaintiff knowingly and voluntarily elected not to take the maximum bad debt deductions which it could have taken for 1962 and 1963 on the basis of information appearing in its returns as originally filed. First, if plaintiff had claimed the maximum bad debt deduction which could have been computed from information contained in its 1962 and 1963 returns as originally filed, operating losses would have been presented on those returns. Plaintiff believed that it was good and prudent business practice to reflect some taxable income for 1962 and 1963, even though it could have technically avoided the payment of any tax in either of the two years by claiming a deduction for the maximum additions to its bad debt reserve which the information presented in its returns as originally filed would have justified. Secondly, plaintiff believed that its bad debt reserve, after additions originally claimed were made, was sufficient in light of the loans then outstanding, but not considering the municipal bonds which it held represented loans."[2] A $45,000 deduction was therefore taken in 1962 and $175,000 was deducted in 1963. Although it could have established a sep-arate reserve for the bonds under § 582(a) of the Code, the bank decided to use the specific charge-off method to account for any bad debt losses arising from its bond transactions.[3] Taxpayer now seeks an additional deduction of $248,999.36 for 1962 and $223,773.22 for 1963.

We agree with the district court that in the circumstances of this case taxpayer is not entitled to recompute its bad debt deduction. Taxpayer cannot assert that it has suffered an actual loss as a result of the government's recharacterization of its bond transactions; the bad debt reserve initially established has not proved inadequate to provide taxpayer with tax deductions for its actual bad debt losses. *Compare* Travis v. Commissioner, 406 F.2d 987 (6th Cir., 1969). The sole reason that taxpayer desires to increase its reserve and get the corresponding deduction is to soften the blow of our decision holding that taxpayer erroneously[4] failed to include the interest from the bonds in its gross income. But, "[t]he deduction is predicated upon what a taxpayer determines its reserve should be rather than what it determines its deduction should be." Rio Grande Bldg. & Loan Ass'n v. Commissioner, 36 T.C. 657, 665 (1961).[5] Moreover, taxpayer did not believe—as evidenced by its failure to take the maxi-

---

2. This is a quote from the stipulation of facts.

3. Such a loss would appear to be a rare occurrence since, as we noted in our prior opinion, "only twice in the history of taxpayer has a dealer failed to cause taxpayer to be paid the book value of bonds for which taxpayer had paid . . . ." 421 F.2d at 449.

4. A significant flaw in the bank's approach to this case is its attempt to treat its erroneous conclusion regarding the nature of its municipal bond transactions as a "mistake of fact" and to build various arguments on this premise. We rejected a similar argument in the first appeal in the following manner:

"... [T]axpayer contends that the question of ownership is one of fact, determined by the trial court in its favor, which should not be set aside unless clearly erroneous. Fed.R.Civ.P. 52(a). We recognize that the characterization of taxpayer's transactions with the dealers and other banks is at least partially a question of fact. Nevertheless, "'* * * [t]he district court's finding on this ultimate issue * * * is not to be garrisoned by the clearly erroneous rule. *Though it has factual underpinnings this ultimate issue is inherently a question of law.* Obeisance to the clearly erroneous rule must yield when the facts are undisputed and we are called upon to reason and interpret. This is the law obligation of the court as distinguished from its fact finding duties. * * *'.

United States v. Winthrop, 5 Cir., 1969, 417 F.2d 905." (Emphasis added.)

5. Both the government and the taxpayer rely on this case as support for their respective positions. Read as a whole, this case does not support the taxpayer in its attempt to recompute its bad debt loss deduction.

mum allowable deduction—that its reserves were inadequate, and our recharacterization of the bond transactions has had no effect on this initial determination. Taxpayer did not manifest an intent to take the maximum allowable deduction in the first place so we see little reason for allowing taxpayer to take that deduction now solely for the purpose of obtaining a larger tax deduction. *See* Rio Grande Bldg. & Loan Ass'n v. Commissioner, *supra*.

The judgment of the district court is affirmed.