**FLAMINGO RESORT, INC.,**
Plaintiff-Appellant,

v.

**UNITED STATES of America,**
Defendant-Appellee.

No. 80–5318.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 5, 1981.

Decided Jan. 7, 1982.

Rehearing and Rehearing En Banc
Denied April 2, 1982.

Stephen L. Morris, Lionel, Sawyer & Collins, Las Vegas, Nev., for plaintiff-appellant.

Daniel Ross, Washington, D. C., argued, for the U. S.; M. Carr Ferguson, Asst. Atty. Gen., Washington, D. C., on brief.

Before SNEED, TANG and PREGERSON, Circuit Judges.

SNEED, Circuit Judge:

The taxpayer, Flamingo Resort, Inc. (Flamingo), appeals from summary judgment by the district court in favor of the government. *See Flamingo Resort, Inc. v. United States,* 485 F.Supp. 926 (D.Nev. 1980). The action was instituted initially by Flamingo to recover monies, plus interest, paid by it pursuant to the assertion by the Commissioner of Internal Revenue (Commissioner) of a deficiency with respect to Flamingo's taxable period ending December 31, 1967.

Flamingo sought summary judgment with respect to that portion of the assessed deficiency that related exclusively to certain of the casino's receivables known as "pit markers." Flamingo's motion sought determination of the question of liability only, with the amount subject to later determination. The government also moved for summary judgment with respect to the entire amount in dispute.

The district court, after concluding that the one possible triable issue of material fact would be relevant only if legal enforceability of gambling debts was necessary for the accrual of the receivables in question, granted the government's motion for summary judgment on the ground that accrual was proper despite the absence of legal enforceability. We affirm.

## I.

### FACTS

The facts are set forth in detail by the district court in its opinion. 485 F.Supp. at 928–30. Briefly, they are as follows. Flamingo is a legal, licensed, gambling casino operating in the State of Nevada. The casino, an accrual basis taxpayer, excluded $676,432.00 of casino receivables in its 1967 tax return. The Commissioner required the accrual of these receivables and authorized an operating reserve fund for bad debts of $130,721. He then assessed a tax deficiency in the amount of $261,942.65, plus interest.

The receivables in dispute arose from uncollected loans extended by Flamingo in the course of its business. In order to facilitate its gambling operations, Flamingo extended credit to some of its customers. That line of credit was proffered only after an extensive credit check of the patron was conducted by the casino. The customer would sign a "marker" signifying his liability for the sum loaned.[1] Approximately sixty percent of the casino's total play resulted from such credit extensions.

Extensive collection efforts were undertaken on behalf of Flamingo to receive payment of those outstanding casino receivables not repaid prior to the patron's departure. Flamingo's estimates of collectability of those receivables ranged as high as ninety-six percent. The extension of credit and high incidence of payment occurred despite the fact that Nevada does not recognize the legal enforceability of gambling debts. *Corbin v. O'Keefe*, 87 Nev. 189, 484 P.2d 565 (1971).

## II.

### ANALYSIS

■ The time of reporting of income of accrual basis taxpayers is governed by the "all events" test. The origins of this test can be traced to *United States v. Anderson*, 269 U.S. 422, 46 S.Ct. 131, 70 L.Ed. 347 (1926). There the Supreme Court held a tax payment for sale of munitions was *deductible* only in the year the sale occurred and not the following year in which the tax was paid. The taxpayer had contended the tax could not be accrued as an expense prior to its assessment and due date. The Court, in rejecting that argument, found "that in advance of the assessment of a tax, all the events may occur which fix the amount of the tax and determine the liability of the taxpayer to pay it." *Id.* at 441, 46 S.Ct. at 134. This approach was subsequently adopted by the Treasury Department with respect to the accrual of income. "Under an accrual method of accounting, income is includible in gross income when all the events have occurred which fix the right to receive such income and the amount thereof can be determined with reasonable accuracy." Treas.Reg. § 1.451–1(a). *See also* Treas.Reg. § 1.446–1(c)(1)(ii).

This case does not involve the question of "reasonable accuracy." Rather the issue is when does the right to receive the income which the "markers" represent become "fixed" for accrual purposes. Commentators and the courts have generally stated that the existence of a definite liability is a prerequisite to the accrual of any obligation. *See* 2 J. Mertens, *The Law of Federal Income Taxation* §§ 12.61–62, 12.66 (rev. ed. 1974); Holland, *Accrual Problems in Tax Accounting*, 48 Mich.L.Rev. 149, 152, 155–56 (1949) [hereinafter cited as Holland]; J. Chommie, *Federal Income Taxation*, (2d ed. 1973) § 83 at 237; *Lucas v. North Texas Lumber Co.*, 281 U.S. 11, 50 S.Ct. 184, 74

---

**1.** These markers resemble counterchecks and as such indicate to the maker a definite and binding obligation of repayment.

L.Ed. 668 (1930) (inasmuch as the vendee did not become unconditionally liable to the vendor for the purchase price in a particular year, no income with respect to the sale accrued to the vendor taxpayer). *But see* Holland, *supra,* at 154 (noting that the extremely strict requirement of *North Texas Lumber Co.* has been relaxed considerably). Flamingo, relying on these authorities, contends that because the persons who gave the "markers" for gambling purposes had no legal obligation to repay the casino, the "markers" being void as a matter of law under *Evans v. Cook,* 11 Nev. 69, 75 (1876), the "liability" they represent was not "fixed." Rather discharge of the "liability" was contingent on the customer's volition. Therefore, Flamingo should not be required to accrue the "markers."

Flamingo also relies on *H. Liebes & Co. v. Commissioner,* 90 F.2d 932 (9th Cir. 1937). There the issue was when should a debt due an accrual basis taxpayer by the government be accrued. The debt was owed by the government as the result of litigation. This court stated:

> We may conclude that income has not accrued to a taxpayer until there arises to him a fixed or unconditional right to receive it. . . .
>
> The complete definition would therefore seem to be that income accrues to a taxpayer, when there arises to him a fixed or unconditional right to receive it, if there is a reasonable expectancy that the right will be converted into money or its equivalent.

*Id.* at 937–38.

The court held that the right was fixed immediately upon expiration of the time for appeal by the government from the judgment in favor of the taxpayer. At that point there was a reasonable expectancy that the claim would be converted into money even if the funds to satisfy the

judgment had not been appropriated. Although *Liebes* clearly establishes that an obligation must be "fixed" and that there be a "reasonable expectancy" of the obligation being converted into cash or its equivalent, it did not hold that in *all* situations the existence of a legal liability to pay is a prerequisite to the existence of a "fixed or unconditional right" to receive payment.

Nor do we believe that this prerequisite universally exists. Support for this position is provided by the line of authority that originates in *Barker v. Magruder,* 95 F.2d 122 (D.C.Cir.1938), a case involving a taxpayer-lender who charged a rate of interest that violated the usury statute of the District of Columbia. The court held that, despite the fact the statute prohibited the taxpayer from legally enforcing the recovery of any interest, the uncollected usurious interest was properly accruable. It stated, "[t]he correct answer, as we think, depends not so much, as appellants urge, upon the legal right to enforce collection as upon the existing probability of its being received." *Id.* at 123.

The taxpayer's course of dealing with its debtor was considered determinative in fashioning the definition of "fixed."[2] In doing so the *Barker* court can be seen as properly avoiding a rigid definition of the term "fixed" in order to be responsive to unique facts and practical considerations. *See C. A. Durr Packing Co. v. Shaughnessy,* 81 F.Supp. 33, 36 (N.D.N.Y.1948), *aff'd per curiam,* 189 F.2d 260 (2d Cir.), *cert. denied,* 342 U.S. 850, 72 S.Ct. 78, 96 L.Ed. 641 (1951).

*Barker* addresses a problem analogous to that presented in this case. Both involve a taxpayer attempting, as the district court below aptly phrased it, to "shield its *unsanctioned* operations from the normal incidents of the United States tax laws." 485 F.Supp. at 938 (emphasis added). Flamingo

---

2. One commentator has taken the position that the case should be passed over as one departing from the general requirement of the existence of a legal liability prior to the accrual of income. He notes the lendor and obligor were both controlled by the same interest and thus "the presence of a legally enforceable obliga-

tion would not serve to increase the probability of payment." Holland, *supra,* at 158. The *Barker* court, however, considered the overall course of dealing between the parties, with the unity of interest being but one factor. *See Travis v. Comm'r,* 406 F.2d 987 (6th Cir. 1969), discussed *infra.*

attacks this characterization as both astonishing and wrong and argues that the casino's operations are sanctioned by law. This is not the point the district court was addressing. Its comments were directed at the unsanctioned activity of gambling debt *enforcement*, not the day-to-day legally authorized gambling operations of the appellant. Gambling debt enforcement in Nevada in 1967 and usurious interest enforcement in the District of Columbia at the time of *Barker* were each confronted by a bar to the use of the courts. In neither case would the courts have been available to aid enforcement.

■ Flamingo here, as did the taxpayer in *Barker*, points to certain speculative and potential legal objections to payment available to its debtors. The practical answer emerges from the facts. Few, if any, debtors raise these objections and usually they pay up. Gambling is big business in Nevada. Flamingo and others lawfully engaged in gambling in Nevada who employ the accrual basis in tax accounting should not be permitted to distort that method of accounting merely because the State of Nevada chooses not to permit the use of its courts to collect gambling debts.

*Barker* does not stand alone. The Court of Claims followed it in a case involving the same taxpayer. *See Barker v. United States*, 26 F.Supp. 1004 (Ct.Cl.1939). The court stated that it was in complete accord with the reasoning of the D. C. Circuit and refused to bar the accrual of income. Another case is *Travis v. Commissioner*, 406 F.2d 987 (6th Cir. 1969). The case involved a statutory prohibition against the collection of monies due under an executory contract for services which have not been rendered. The taxpayer contended such a legal bar should prevent recognition of that income under the accrual basis of accounting prior to the rendition of the services. The court, citing *Barker v. Magruder*, 95

F.2d 122 (D.C.Cir.1938), with approval, noted the Supreme Court in *Commissioner v. Hansen*, 360 U.S. 446, 79 S.Ct. 1270, 3 L.Ed.2d 1360 (1959), had chosen to employ the phrase "fixed right to receive" rather than "enforceable right to recover." It held that accrual was proper when the sums became due and payable even though the service for which the sums were to be paid had not been performed. The *Travis* court believed the practical problems which would arise if legal enforceability were required necessitated such an interpretation.

■ We agree and, as did the court in *Travis, id.*, emphasize the fact that the taxpayer rarely had to resort to litigation to collect the sums owing to it. Flamingo, as noted earlier, conducted approximately sixty percent of its business through extensions of credit, and its own estimates of collectability on outstanding casino receivables ranged as high as *ninety-six* percent. The lack of legal liability did not interfere with Flamingo's operation and it is doubtful that legal enforceability of the "markers" would or could increase its recovery rate.[3] Under these circumstances, the obligations of Flamingo's patrons are as "fixed" as it is possible to be and, in fact, no less so than those of other businesses. Flamingo should not be heard to argue that it should be taxed differently from other legitimate businesses. Its inability to enforce its "markers" in court is not a sufficient burden to justify such a differential. The debts which the "markers" represent are, therefore, fixed; there is a reasonable expectancy of collection; and no contention has been made that the amounts cannot be determined with reasonable accuracy.[4]

■ Flamingo puts forth a plethora of cases in support of its contention that legal enforceability of a debt must exist prior to its accrual. These cases, however, are uni-

3. *Cf.* Holland, *supra*, at 158 (analysis/critique of *Barker v. Magruder*, 95 F.2d 122 (D.C.Cir. 1938)), and *see* note 2, *supra. See also Barker v. Magruder*, 95 F.2d at 124, (court's emphasis on course of dealing as determinative of when income may be seen as fixed).

4. The existence of an apparently sufficient reserve fund approved by the Commissioner under I.R.C. § 166(c) in conjunction with the available option of a bad debt deduction, I.R.C. § 166(a), operate to mitigate any legitimate economic hardship to the appellant taxpayer.

formly inapposite. They involve, as the district court correctly noted, factual circumstances not germane to the instant case. *See Flamingo Resort, Inc. v. United States*, 485 F.Supp. at 934.[5] We hasten to add what should be obvious, however. Nothing in this opinion is intended to suggest that legal enforceability is not relevant in determining when a right to income is "fixed" for accrual basis tax accounting purposes.

We merely hold that under the circumstances of this case its absence is not controlling.

AFFIRMED.

5. Appellant does raise one case which squarely addresses the question now before us. *Desert Palace, Inc. v. Comm'r*, 72 T.C. 1033 (1979). The Tax Court ruled gambling debts were not accruable to a gambling casino until collected. The court, however, did so on the basis of the government's concession of that issue at trial, and astutely commented that the issue was more complex than the parties perceived, citing the *Travis* and *Barker* decisions, 72 T.C. at 1050 & n.8. No such concession was made in the case now before us. And even if such a concession was made by the government, we are not bound by a party's erroneous view of the law. We agree with the district court that the Tax Court holding should not be applied here.