**NATIONAL DEVELOPMENT COMPANY, Petitioner,**

v.

**Adnan M. KHASHOGGI, Respondent.**

**No. 89 Civ. 7457 (MP).**

United States District Court, S.D. New York.

Jan. 23, 1992.

---

Jones, Day, Reavis & Pogue (Fredrick E. Sherman, of counsel), New York City, for petitioner.

Sidley & Austin (Steven M. Bierman, of counsel), New York City, for respondent.

## ORDER AND DECISION

MILTON POLLACK, Senior District Judge.

Petitioner National Development Company ("NDC") moves for summary judgment confirming an award issued by a tribunal of the Court of Arbitration of the International Chamber of Commerce, rendered on April 12, 1989, against respondent Adnan M. Khashoggi ("Khashoggi") in the amount of $4,441,180.47. The motion also requests that the Court grant NDC post-award, prejudgment interest on the award at the statutory rate. The Court finds that the Award of the Court of Arbitration, and the proceedings from which it issued, fully satisfy all the requirements of the Convention pertaining to confirmation, and that Khashoggi's objections to it are frivolous and diversionary. NDC's motion for summary judgment is granted in its entirety.

### Facts

In 1983 or 1984, NDC, a corporation wholly owned by the Government of the Phillipines, and Triad Holding Company ("Triad Holding"), along with its 100% shareholder Khashoggi, entered into negotiations for the establishment of a joint venture trading company. On May 16, 1984, NDC, Triad Holding and the joint venture company, Triad Asia, Ltd. ("Triad Asia"), executed a Shareholders Agreement, by which NDC and Triad Holding each subscribed to one-half of Triad Asia's stock. The Agreement provided that upon winding up of Triad Asia, NDC and Triad Holding would each receive a pro rata share of the assets after payments of all the liabilities. On November 22, 1984, NDC and Triad Holding entered into a further Memorandum of Agreement providing for arbitration if any disputes between the parties arose.

On March 17, 1986, NDC and Triad Holding agreed to dissolve Triad Asia. NDC directed Triad Asia's bank to transfer the entire proceeds of Triad Asia's account to Triad Holding's account. Triad Holding was then supposed to transfer NDC's one-half share to the account of Philippine Associated Smelting & Refining Corp., anoth-

er NDC company. Triad Holding never transfered the funds.

In August 1986, NDC requested that Triad Holding and Khashoggi submit to arbitration of NDC's claim for one-half of Triad Asia's $7 million, relying on the arbitration clause in the Memorandum of Agreement between NDC and Triad Holding. As prescribed in the Memorandum of Understanding, the arbitration would take place before a panel in London, England under the auspices of the International Chamber of Commerce.

In October 1986, NDC filed a complaint in this Court, seeking to compel Khashoggi to arbitrate. A default judgment was entered on October 15, 1987, on a September 23, 1987 decision, directing Khashoggi to arbitrate his dispute with NDC before the Court of Arbitration of the International Chamber of Commerce. The order, judgment and decree so entered reads:

ORDERED, ADJUDGED AND DE-CREED: that defendant Adnan Khashoggi shall arbitrate his dispute with plaintiff in Case No. 5731/BGD (*National Development Company v. Triad Holding Corporation, et al.*) pending before the Court of Arbitration, the International Chamber of Commerce and that plaintiff shall have judgment against defendant Adnan M. Khashoggi in the amount of $80.00 for its costs and disbursements in this action.

Dated: New York, New York
September 23, 1987

John Sprizzo
U.S.D.J.

The arbitration was held in London, England in February 1989 before a panel of three arbitrators chosen in accordance with the Memorandum of Agreement, and conducted under the procedures of the International Chamber of Commerce. NDC asserted that, following the agreement by NDC and Triad Holding to dissolve Triad Asia, Triad Holding converted NDC's 50 percent portion of the distribution of Triad Asia's assets, and that Khashoggi was jointly and severally liable with Triad Holding because he was Triad Holding's alter ego. Khashoggi did not appear at or participate in the arbitration.

On April 12, 1989, the Arbitral Tribunal of the ICC rendered an Award in favor of NDC and against Khashoggi. In the Award, the Arbitral Tribunal held, first, that the dispute was one to which the parties had intended the arbitration clause of the Memorandum of Agreement to apply, and second, that Khashoggi was the alter ego of Triad Holding Co. and therefore could be considered a party to the Memorandum of Agreement.

The Tribunal found Triad Holding and Khashoggi to be jointly and severally liable to NDC for the following sums:

| | | |
|---|---|---|
| 1. | Principal damages in the amount of | $3,450,000.00 |
| 2. | Interest on the principal amount of the Award from March 31, 1986 to April 12, 1989 | $ 787,644.99 |
| 3. | Costs of the arbitration | $ 203,536.47 |
| | **TOTAL:** | **$4,441,180.47** |

---

Award Sentence, *National Development Co. v. Triad Holding Corp. and Adnan M. Khashoggi*, Case No. 5731/RP/BGD, at p. 37.

Khashoggi moved to vacate this Court's judgment of October 15, 1987, compelling arbitration, on the ground of invalid service of process. On June 1, 1990, after an evidentiary hearing, the Court denied the motion in respect to the original summons and complaint served in the case. *National Development Co. v. Triad Holding Corp., Adnan M. Khashoggi, et al.,* 131 F.R.D. 408 (S.D.N.Y.1990). The Court of Appeals for the Second Circuit affirmed on

April 15, 1991, stating, after a discussion of the issue of service, that:

> Since service was properly effected on Khashoggi, his motion pursuant to Rule 60(b)(4) to vacate the default judgment entered on the original complaint for want of personal jurisdiction was properly denied. Accordingly, we affirm.

*National Development Co. v. Triad Holding Corp., Adnan Khashoggi, et al.,* 930 F.2d 253, 258 (2d Cir.1991). On November 18, 1991, the Supreme Court of the United States denied Khashoggi's petition for *certiorari* without comment. —— U.S. ——, 112 S.Ct. 440, 116 L.Ed.2d 459 (1991).

### Analysis

■ This summary judgment motion is made pursuant to Rule 56, F.R.Civ.P., section 207 of the Arbitration Act, 9 U.S.C.A. § 207 (West Supp.1991), and the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, New York, June 10, 1958, 21 U.S.T. 2517, T.I.A.S. 6997, 330 U.N.T.S. 38, reprinted as a note following 9 U.S.C.A. § 201 (West Supp.1991). Section 207 of the Arbitration Act provides that this Court must grant the petition to confirm the Award if it satisfies all the requirements of the Convention. Section 207 states that:

> Within three years after an arbitral award falling under the Convention is made, any party to the arbitration may apply to any court having jurisdiction under this chapter for an order confirming the award as against any other party to the arbitration. The court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention.

9 U.S.C.A. § 207 (West Supp.1991). The Court has jurisdiction over NDC's petition to confirm and enforce the Award of the ICC, based on section 203 of the Arbitration Act, which provides that: "An action or proceeding falling under the Convention shall be deemed to arise under the laws and treaties of the United States. The district courts of the United States ... shall have original jurisdiction over such an action or proceeding, regardless of the amount in controversy." 9 U.S.C.A. § 203 (West Supp.1991)

The Award clearly falls under the Convention. Article I(1) of the Convention provides that it:

> shall apply to the recognition and enforcement of arbitral awards made in the territory of a State other than the State where the recognition and enforcement of such awards are sought, and arising out of differences between persons, whether physical or legal.

Since England is a signatory of the Convention, this Award satisfies the further requirement, adopted by the United States, that the State in which the arbitration award is rendered must be one that reciprocates the confirmation of arbitration awards.

■ None of the grounds specified in the Convention for refusal or recognition of the Award has been established by Khashoggi, whose objections to notice, to his inability to attend the arbitration proceeding, and to the authority of the Arbitral Tribunal to resolve the issues in dispute are diversionary and frivolous. In regard to notice, in affirming this Court's denial of Khashoggi's motion to vacate the judgment compelling him to submit to arbitration, the Second Circuit observed that notice of the commencement of the arbitration was given to Khashoggi. *National Development Company v. Triad Holding Corp.,* 930 F.2d at 255. Khashoggi's decision not to attend the arbitration proceeding in England because he was afraid of being taken into custody for extradition to face criminal charges in the United States does not constitute an *inability* to attend the proceedings. Finally, the Arbitral Tribunal's determination that the agreement to arbitrate applied to the parties' dispute as to the proper distribution of the assets of Triad Asia following its dissolution was well-founded. The general language of the arbitration provision states that it covers matters "arising out of or relating to" the Memorandum of Agreement, which includes discussion of the 50–50 nature of the parties' joint venture.

Also to no avail is Khashoggi's claim that the Award should not be confirmed because Khashoggi was not a party to the Memorandum of Agreement and therefore never agreed to submit to arbitration. An individual or entity can be a party to an arbitration agreement by virtue of its status as alter ego of a signer of the agreement. See *Fisser v. International Bank*, 282 F.2d 231, 234–35 (2d Cir.1960) (holding that "the judge erred in ruling that the respondent was not bound by the arbitration clause merely because it had not signed the charter" and that "respondent's amenability to arbitration could be solved only by determining whether [the party that signed] did so as the respondent's *alter ego* "); *Interbras Cayman Co. v. Orient Victory Shipping Co., S.A.*, 663 F.2d 4, 6–7 (2d Cir.1981); *Interocean Shipping Co. v. National Shipping & Trading Corp.*, 523 F.2d 527, 539 (2d Cir.1975), *cert. denied*, 423 U.S. 1054, 96 S.Ct. 785, 46 L.Ed.2d 643 (1976).

The time for Khashoggi to argue that he could not be compelled to submit to arbitration because he was neither a party to the Memorandum of Agreement nor the alter ego of a party, was in NDC's action to compel him to arbitrate. See *Hidrocarburos y Derivados, C.A. v. Lemos*, 453 F.Supp. 160, 177 (S.D.N.Y.1977) (holding that the leading Second Circuit cases on the subject "require that the alter ego theory, and any other theory determinative of the identity of parties to an arbitration agreement, be tested by an action to compel arbitration under [9 U.S.C.] § 4, prior to the arbitration hearings"). The issue of whether Khashoggi was bound by the arbitration agreement was resolved by the October 15, 1987 judgment of this Court ordering him to submit to arbitration by the ICC on the dispute between him and NDC, and the denial of Khashoggi's motion to vacate that judgment for a deficiency in service.

NDC is also entitled to interest on the amount owed to it by Khashoggi accruing between the issuance of the Arbitral Award and the date of entry of judgment in this action. Khashoggi has not present-ed any persuasive reasons for opposing the grant of pre-judgment interest "that would overcome our presumption in favor of pre-judgment interest." *Waterside Ocean Navigation Co., Inc. v. International Navigation, Ltd.*, 737 F.2d 150, 154 (2d Cir.1984). Interest is at the rate set forth in 28 U.S.C. § 1961(a) for money judgments.

Accordingly, the Arbitral Award of the Court of Arbitration of the International Chamber of Commerce, rendered on April 12, 1989 is confirmed, and interest is awarded for the post-award, pre-judgment period. Summary judgment for the plaintiff is granted accordingly.

SO ORDERED.