IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

————————————————————

No. 98-20810

————————————————————

SCHLUMBERGER TECHNOLOGY CORPORATION,
also known as Sedco, Inc.

                                        Plaintiff-Appellee,

                        versus

UNITED STATES OF AMERICA,

                                        Defendant-Appellant.

————————————————————

Appeal from the United States District Court
for the Southern District of Texas

————————————————————
November 5, 1999

Before REAVLEY, HIGGINBOTHAM, and DENNIS, Circuit Judges.

HIGGINBOTHAM, Circuit Judge:

This case concerns the time at which a taxpayer must accrue a foreign arbitral award as income. The district court held that an arbitral award need not be accrued until the time to appeal judicial confirmation of the award expires in the jurisdiction in which enforcement is sought. We AFFIRM.

I.

Sedco, Inc., now part of Schlumberger Technology Corp. (STC), entered a joint venture in 1966 with a company owned by the Algerian government, known as Sonatrach. Sedco and Sonatrach owned 49% and 51%, respectively, of the joint venture, which engaged in oil and gas exploration. An agreement required binding arbitration

before a Swiss tribunal for any dispute between the parties. In February of 1981, Sedco claimed Sonatrach was using its majority interest in the venture to deprive Sedco of its stock value. By 1983, Sonatrach had liquidated the venture and informed Sedco that Sedco's portion of the proceeds was $2.6 million. Sedco disputed this, claiming Sonatrach sold assets below market value to entities Sonatrach owned or controlled.

Based on this dispute, a Swiss arbitration tribunal awarded Sedco nearly $26 million in February of 1984. In April of 1984 a Swiss appeals court temporarily stayed the arbitral award. In May, the Swiss court revoked the stay, and in July of 1984 the Swiss court rejected Sonatrach's application for nullification of the award.

Sedco then began enforcement proceedings. The recognition and enforcement of foreign arbitral awards is governed by the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958 (New York Convention). See 9 U.S.C. § 201. In 1984, every major Western European Country except Portugal was party to the New York Convention.

Article III of the New York Convention requires signatories to recognize arbitral awards as binding and enforce them just as easily as domestic arbitral awards, subject only to a few defenses: incapacity of a party, illegality of agreement, lack of due process in arbitration, award outside scope of arbitration, improper

arbitration panel, and vacated or not-yet-binding award. See New York Convention, Arts. III, V.

Furthermore, if the subject matter of the dispute is not capable of settlement by arbitration under the law of the enforcing state or if enforcement of the award by the enforcing state would be contrary to the public policy of the enforcing state, then the enforcing state can also refuse to enforce the award. See id. Thus, recognition of an arbitral award is not automatic and can be refused by the enforcing state if the losing party proves one of these defenses.

On September 7, 1984, Sedco demanded payment from Sonatrach because the time for appealing the award in Switzerland had expired. No response came. On September 17, 1984, Sedco filed in France for enforcement because Sonatrach had no assets in Switzerland that could be attached.

In the French court, Sedco obtained an "*exequatur*" or enforcement order that issued on September 19, 1984. This order granted provisional recognition of the award in France subject only to appeal on grounds similar to the New York Convention defenses above. The time for appeal by non-residents such as Sonatrach was three months from the date of official notification of the order.

Because Sedco received notification of the order on September 26, 1984, the time for Sonatrach's appeal would not have expired

until at least sometime after December 24, 1984, even if Sedco had notified Sonatrach immediately.

In October of 1984, Sedco got permission from the French court to begin attachment proceedings on Sonatrach's French assets. The French court issued an order allowing attachment by means of "*saisie-arret*," comprising two phases. In phase one, Sedco attached assets belonging to Sonatrach which resided in the hands of a garnishee such as a bank. In phase two, Sedco applied for a validation order from the appropriate French court directing the garnishee to pay the attached assets directly to Sedco. Gaz de France (GDF), a French-owned gas company, eventually notified Sedco that GDF possessed funds of Sonatrach sufficient to pay the award. Actual execution on the assets held by GDF, however, was contingent on the expiration of the time for appeal (or an explicit denial of the appeal) coupled with an affirmation of the *exequatur* order.

On October 9, 1984, documents were filed with the French court requesting a hearing on the validity of the attachment served on GDF. On December 11, 1984, Sedco and Sonatrach reached a tentative settlement agreement, subject to approval by the Algerian government and Sedco's board of directors.

The current case arises because Sedco merged into STC on December 24, 1984, making Sedco's final taxable year end on December 24, 1984. Its tax return for that year did not include the arbitral award as income. The IRS audited and assessed amounts

4

due and penalties for this omission.  Sedco paid them and filed this  suit for refund.

Both parties sought summary judgment using affidavits from French experts.  Sedco's expert agreed that the arbitral award from Switzerland had res judicata effect and Sonatrach could not attack the merits of the award in a French court; consequently, there was nothing a French court could do to alter the award. Sedco's expert also admitted that under French law, the grounds for challenging the implementation of the award were somewhat more limited than those allowed by the New York Convention.  The expert made no estimate of whether there was any chance for Sonatrach to prevail on such an appeal, and even if Sonatrach prevailed on one of the New York Convention defenses, it would not annul the award or change the amount of damages determined in Sedco's favor.  It would simply mean the award could not be enforced in France.

The expert for the United States said there did not appear to be any possible legal or factual basis to prevent Sedco from obtaining a final decision from the French courts ordering GDF to hand over the attached funds to Sedco, up to the amount of the award.  The United States argued that "all events" necessary to establish Sedco's right to the arbitral award had occurred prior to the close of Sedco's taxable year in 1984 and that the award had become final no later than September 1984.

According to the United States, it was irrelevant whether enforcement had been completed in France by the end of 1984,

because Sedco could not show a sufficient doubt as to the ultimate enforceability of the award under French law to allow Sedco to defer the accrual of the award until 1985 when the parties executed the final agreement.

Sedco maintained that the accrual of the award in 1984 was improper because enforcement of the award was not a foregone conclusion: it could be defeated by a defense to the New York Convention. Thus, accrual was not appropriate until 1985 when Sonatrach actually agreed to pay the award.

The district court granted summary judgment to Sedco, noting that the "the overarching fact [was] that until France judicially recognized the Arbitral Award, the right to income it represented was contingent." Finality did not occur until Sonatrach's time to appeal the *exequatur* order expired. The United States appeals the grant of summary judgment.

## II.

We examine the grant of summary judgment de novo and view factual inferences in the light most favorable to the United States. See Ellisen v. Connor, 153 F.3d 247, 251 (5th Cir. 1998).

The law in this case is easy to state. An accrual basis taxpayer such as Sedco must report income in the taxable year in which the last event occurs which unconditionally fixes the right to receive the income and there is a reasonable expectancy that the right will be converted to money. See H. Liebes & Co. v.

6

<u>Commissioner</u>, 90 F.2d 932, 937-38 (9th Cir. 1937).  The difficulty lies in defining an unconditional, fixed right to receive.[1]  T h e United States argues that once Sedco received a final, unappealable arbitral award in Switzerland, Sedco had an unconditional, fixed right to receive.  Sedco argues that the arbitral award only gave Sedco the right to seek enforcement but not the right to enforce or receive payment.  Until Sedco had a right to enforce – namely, when the time to appeal the *exequatur* order expired – Sedco did not have a right to receive anything.

Both the taxpayer and the government accept the proposition that a domestic judgment constitutes an unconditional, fixed right to receive–assuming the defendant has U.S. assets–despite the potential for collateral attack when enforcing the judgment in another state.  Assuming but not deciding that this is so, we must decide whether an arbitral award is sufficiently like a domestic judgment so as to constitute an unconditional, fixed right to receive.  If it is, then enforcement proceedings in another country such as France are akin to enforcement proceedings in another state when attempting to collect a domestic judgment.

---

[1] The United States argues that the district court confused accrual and cash accounting when applying the standard.  While we agree that the district court used language applicable to cash accounting when explaining accrual accounting, we do not find that the district court applied the wrong standard. Regardless, on appeal our review of a grant of summary judgment is de novo and the judgment will be affirmed if the record indicates "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); <u>Ellisen</u>, 153 F.3d at 251.

7

Some courts in fact have stated that "a confirmation proceeding [with respect to a foreign arbitral award subject to the New York Convention] is not an original action; it is, rather, in the nature of a post-judgment enforcement proceeding." Fertilizer Corp. of India, 517 F.Supp. 948, 963 (S.D. Ohio 1981); International Standard Elec. v. Bridas Sociedad Anonima, 745 F. Supp. 172, 182 (S.D.N.Y 1990). In neither case, however, was the comparison made in order to determine whether the award should be seen as a "right to receive" before confirmation. See Fertilizer, 517 F.Supp at 963; International Standard, 745 F. Supp at 182. Instead, there are compelling reasons to say that a final, binding arbitral award differs sufficiently from a domestic judgment that it does not constitute a fixed right to receive.

First, an arbitral award must be confirmed, and the confirmation process allows for appeal and potential denial of enforcement based on the defenses of the New York Convention. Although Sonatrach did not appeal the *exequatur* order in France, Sonatrach had the *right* to appeal until some time after December 24, 1984. Had Sonatrach appealed successfully, Sedco would not have had an enforceable judgment in France, but only an arbitral award which Sedco would have been forced to confirm and enforce elsewhere.

Domestic judgments are also capable of being attacked on certain grounds when taken to another state. However, under full

faith and credit, such judgments must be given the same effect the judgment would have in its rendering state. See <u>Fehlhaber v. Fehlhaber</u>, 681 F.2d 1015, 1021 n.6 (5th Cir. 1982) (noting that full faith and credit analysis reduces "to only an inquiry into what effect a judgment has in its rendering state, for a state is not allowed to give effect to a judgment rendered in violation of due process"). Unlike the New York Convention, there is "no roving 'public policy exception' to the full faith and credit due judgments." See <u>Baker by Thomas v. General Motors Corp.</u>, 118 S. Ct. 657, 664 (1998).

As such, even though a foreign arbitral award is res judicata between the parties as to the merits (and a foreign court cannot alter the award), that court can refuse to enforce the award under a public policy exception. Thus, defenses to confirming a foreign arbitral award are broader than those available when enforcing domestic judgments under full faith and credit.

Second, once Sedco received the final award from Swiss arbitration, the award was not self-executing. See <u>Fotochrome, Inc. v. Copal Co.</u>, 517 F.2d 512, 518 (2d Cir. 1975). In other words, before an order of execution could issue which would allow the award to be enforced, the award first had to be converted by confirmation into a judicial judgment. The expert for the United States agreed that Sedco's award could not be executed until the

*exequatur* order became final through the expiration of the time for appeal.

While no order is self-executing – even a Texas judgment will not "get up and execute itself" in Texas – an arbitral award requires an extra step that a Texas judgment does not. An arbitral award must first be judicially confirmed, and it is not confirmed until the time for appeal expires. Given this additional step in the enforcement process, it makes little sense to say a right to receive exists before the ability to execute on a judgment is granted.[2] Finally, and most importantly, an arbitral award has no legal effect without the stamp of judicial approval. "Absent voluntary compliance, the authority of the arbitrator does not include the coercive power to enforce the award, and thus the award must be transformed into a judgment, which can be executed with the enforcement mechanism of the state." Michael H. Strub, Jr., Note, *Resisting Enforcement of Foreign Arbitral Awards under Article V(1)(E) and Article VI of the New York Convention: A Proposal for Effective Guidelines*, 68 TEX. L. REV. 1031, 1044 (1990). Some cases hold that an expectation of payment need not be legally enforceable to be accruable. See Flamingo Resort, Inc. v. United States, 664 F.2d 1387 (9th Cir. 1981); Eastman Kodak Co. v. United

_____

[2] Even if Sonatrach owned Swiss assets, Sedco could not have executed on the arbitral award in Switzerland. Instead, Sedco would have been forced to institute a separate proceeding in Switzerland to judicially confirm the award.

10

States, 534 F.2d 252 (Ct. Cl. 1976); Travis v. Commissioner, 406 F.2d 987 (6th Cir. 1969); Barker v. Magruder, 95 F.2d 122 (D.C. Cir. 1938). These cases, however, involve undisputed debts and debts such as gambling markers which are routinely paid in the normal course of business although technically unenforceable. See, e.g., Flamingo Resort, 664 F.2d at 1390-91.

The United States asks that the reasoning of these cases not be so limited, but to read them more expansively ignores the critical difference between disputed and undisputed debts. The general rule is that taxpayers do not have to accrue disputed debts until the dispute is resolved. See Thompson v. Commissioner, 761 F.2d 259, 265 (6th Cir. 1985) (holding that liability is not fixed until "the last bell [is] rung in the last court"); Maryland Shipbuilding and Drydock Co. v. United States, 409 F.2d 1363, 1367 (Cl. Ct. 1969) (requiring a judgment to be "enforceable with no strings attached"); H. Liebes & Co. v. Commissioner, 90 F.2d 932, 938 (9th Cir. 1937) (holding that a disputed payment need not be accrued until the time for appeal has expired); Beauty Acquisition Corp. v. Commissioner, 69 T.C.M. 1971, 1977 (1995) ("The all-events test is based on the existence or nonexistence of legal rights or obligations at the close of a particular accounting period, not on the probability – or even absolute certainty that such right or obligation will arise at some point in the future.").

As such, a foreign arbitral award need not be accrued until judicially confirmed in a jurisdiction in which enforcement is

sought. Given that some line must be drawn, it makes sense to draw the line between a private arbitration award and a judicially enforceable order, even if the former flows almost always into the latter. The existence of state enforcement mechanisms is one reason we give great respect to judicial orders. The lack of such enforcement for a bare arbitral award is thus a decisive distinction. Drawing the line at the existence of an unappealable judicial confirmation is also a rule that is easy to follow and apply. Furthermore, in the context of international arbitration, it makes sense to give the taxpayer the benefit of the doubt given the inherent difficulties associated with collecting foreign awards in foreign countries.

For these reasons, we hold that a fixed right to receive does not exist with respect to a foreign arbitral award until the award is judicially confirmed and no longer subject to appeal in the jurisdiction in which enforcement is sought. Because we hold that Sedco did not have to accrue their arbitral award in 1984, we do not reach their alternative argument that the award could be treated as an installment sale under 26 U.S.C. § 453(c).

AFFIRMED.