**CONSORCIO RIVE, S.A. DE C.V.**

v.

**BRIGGS OF CANCUN, INC., et al**

No. Civ.A. 99–2204.

United States District Court,
E.D. Louisiana.

March 14, 2001.

Randall A. Smith, Andrew Lewis Kramer, Smith, Jones & Fawer, New Orleans, LA, for Plaintiff.

Robert A. Kutcher, Nicole S. Tygier, Vicki A. Turko, Choplin, Wagner, Cole, Richard, Reboul & Kutcher, LLP, Metairie, LA, for Defendants.

BARBIER, District Judge.

This matter came on for trial before the Court, sitting without a jury, on February 5 and 6, 2001. At the conclusion of the trial, and upon consideration of all of the evidence and arguments of counsel, the Court dictated oral findings of fact and conclusions of law on the issue of whether Briggs of Cancun, Inc., and David Briggs Enterprises, Inc. should be considered a single business enterprise for purposes of the instant dispute. In summary, the Court found that these two entities do not comprise a single business enterprise, and thus that any arbitration award confirmed in this proceeding may only be enforced against Briggs of Cancun, Inc.

At that time, the Court also allowed the parties until February 14, 2001 to file post-trial memoranda on the remaining issues,

after which it took the matter under submission.

In accordance with Federal Rule of Civil Procedure 52(a), the Court now renders its findings of fact and conclusions of law on the two remaining [1] and related issues: (1) whether plaintiff, Consorcio Rive ("Rive"), waived its right to invoke arbitration of the dispute between the parties by filing a criminal Statement of Facts; and (2) whether the filing of the criminal Statement of Facts precluded Briggs of Cancun, Inc. ("Briggs of Cancun") from meaningfully participating in the arbitration proceedings, thus providing it with a defense to the enforcement of the arbitral award pursuant to article V(1)(b) of the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("Convention"), codified at 9 U.S.C. § 201 *et seq.*

To the extent the findings of fact are more properly classified as conclusions of law, they should be so considered; and to the extent the conclusions of law are more properly classified as findings of fact, they should be so considered.

## I. FINDINGS OF FACT

1. Rive is a corporation organized and existing under the laws of the Country of Mexico, with its principal place of business in Mexico City, Mexico.

2. Briggs of Cancun is a corporation organized and existing under the laws of the State of Louisiana, with its principal place of business in Metairie, Louisiana.

3. On October 1, 1991, Rive, represented by Eugenio Riquelme Valdez, and Briggs of Cancun, represented by David A. Briggs, Jr. ("David Briggs") entered into an "Agreement" by which Rive provided property and permits for Briggs of Cancun

---

1. On September 20, 2000, Judge Schwartz entered an order granting reconsideration of his prior order dismissing Briggs' counter-claims. The issue for reconsideration was limited solely to the waiver issue (Briggs' Ninth Defense). Rec. Doc. 91.

to open a restaurant and bar called Fat Tuesdays in Cancun, Mexico.

4. As memorialized in clause 35 of the Agreement, both parties specifically agreed as follows:

THIRTY FIFTH.—Any controversy or claim arising out of, or related to, this agreement, or the making, performance, or interpretation thereof, shall be finally settled by arbitration pursuant to the then-prevailing rules of the INTERAMERICAN COMMERCIAL ARBITRATION COMMISSION and the arbitrators shall be appointed in accordance with such rules. All arbitration proceedings shall take place in Monterrey, N.L., Mexico, and the laws applicable to the arbitration procedure shall be the laws of Mexico. The award of the arbitrator shall be the sole and exclusive remedy between the parties regarding any claims, counterclaims, issues, or accountings presented or pled to the arbitrator; shall be made and shall promptly be payable free of any tax, deduction, or offset; and any costs, fees, or taxes incident to enforcing the award shall, to the maximum extent permitted by law, be charged against the party resisting such enforcement. Judgment upon the award of the arbitrator may be entered in the court having jurisdiction thereof, or application may be made to such court for a judicial acceptance of the award or an order of enforcement. The prevailing party in any such arbitration shall be entitled to recovery of all administration fees and arbitration fees paid. All other costs expenses and fees incurred by either party in connection with such arbitration (including attorneys' fees incurred) shall be borne by the party so incyurring [sic] such fees.

5. On November 2, 1991, Rive and Briggs of Cancun also entered into an "Management Agreement" and a "Commodatum Agreement" for the operation of the Fat Tuesdays restaurant in Cancun. Like the original Agreement, the Management and Commodatum Agreements also provided for controversies or claims to be resolved by arbitration.

6. As a result of a dispute relating to payments due under the Agreement, Rive initiated an arbitration proceeding against Briggs of Cancun in January of 1996 in Mexico.

7. On or about February 14, 1996, David Briggs, Jr. responded to the Inter-American Commercial Arbitration Commission, designating an arbitrator.

8. On or about March 26, 1996, Rive submitted its formal arbitration demand.

9. On or about August 14, 1996, Rive attorney Jose Manuel Gomez Mont Ureta filed a criminal Statement of Facts requesting that the Attorney General for the State of Quintana Roo, Mexico initiate an investigation of Adalberto de Luna Zuniga, Javier Ramirez Meza, David A. Briggs, Jr., and Raul Torres Rivera, alleging a criminal conspiracy by them to prevent Rive "from exercising its full rights in its capacity as lessor regarding the property in question." Exh. 174, 4.

10. David Briggs testified that following the filing of the criminal Statement of Facts, he did not enter Mexico for fear of being detained until after the criminal matter was cleared up in 1998.

11. On or about November 26, 1996, Briggs of Cancun answered the allegations of Rive in the arbitration matter by filing a brief and attaching relevant exhibits.

12. Thereafter, the arbitration continued and the parties were given the opportunity to offer further evidence, which was only presented by Rive, because Briggs of Cancun refused to participate in the arbitration due to alleged criminal proceedings in Cancun.

13. On or about August 22, 1997, David Briggs, and Danny Drago, Chief Financial Officer of David Briggs Enterprises, Inc.,[2] received a letter from the United Mexican States Solicitor of the General Republic, requesting their appearance on October 5, 1997. The letter stated that failure to appear would result in a "remand [of] the current investigation to the Federal Penal Court so that the corresponding arrest warrant may be issued." Exh. 181.

14. David Briggs testified that he voluntarily chose not to comply with the request to appear on October 5, 1997.

15. There was conflicting testimony at trial as to whether an arrest warrant was actually issued for David Briggs. While a document was introduced which appears to reference a pending arrest warrant against David Briggs (Rec.Doc. 178), as well as a document denominated an "amparo" which purports to suspend a warrant (Rec.Doc. 176), no actual arrest warrant for David Briggs was introduced at trial.

16. At trial, David Briggs testified that he did not seek alternative ways to appear at the hearings, such as by telephone, nor did he send a Briggs of Cancun company representative to appear on behalf of the company.

17. In addition, for reasons not explained by the evidence adduced at trial, Briggs of Cancun attorney Andres Gonzalez also failed to appear at the hearings. David Briggs testified that he did not instruct Mr. Gonzales not to attend the arbitration hearing.

18. Briggs of Cancun has never presented to this Court a single piece of evidence or information that it alleges it would have presented to the arbitrators, but did not, because it was precluded from participating fully in the arbitration.

19. On November 6, 1997, the Mexican arbitration board held a final hearing, of which all parties were given proper notice.[3] Although Briggs of Cancun did not appear, Rive's counsel presented written conclusions, and subsequently answered questions from the arbitrators. Rec. Docs. 142 & 172 at 256 ("Laudo Definitivo"). No oral testimony was presented at that hearing.

20. On June 24, 1998, the Mexican arbitration board: (1) ruled that the Agreement was rescinded due to Briggs of Cancun's breaches; (2) awarded Rive $150,000 from Briggs of Cancun for obligations under the October 1, 1991 agreement; (3) awarded Rive $110,000 from Briggs of Cancun for costs and expenses; (4) awarded Rive $2,500,000 from Briggs of Cancun for damages resulting from the breach; and (5) awarded Rive 15% interest after Briggs of Cancun was notified of decision.

21. The arbitration award, totaling $2,760,000, excluding interest, was not served on the parties until March 8, 1999.

22. Rive paid all arbitration costs, totaling approximately $33,000.

23. In April 1999, Rive made formal demand on Briggs of Cancun at the address set forth in the Agreement for the

---

2. David Briggs Enterprises, Inc. is a related entity which the Court has previously ruled is not an "alter ego" for Briggs of Cancun, Inc.

3. The notice defense is not one that was specifically preserved by Judge Schwartz. Nonetheless, the Court observes that the documentary evidence presented at trial demonstrated that Briggs was informed that the arbitration would take place on November 6, 1997 at 11:00 a.m. *See, e.g.,* Rec. Doc. 169, at 10285.

While Briggs' attorney subsequently misstated the date in correspondence to the Chamber of Commerce of Mexico City (Rec.Doc. 141), the error was pointed out to him in a subsequent letter from the Chairman of the Chamber of Commerce. Rec. Doc 170. At any rate, Gonzalez' mistake and its correction do not alter the fact that notice that the hearing would occur on November 6, 1997 was provided, and the hearing was subsequently held on November 6, 1997.

arbitration award and costs, but received no response.

24. To date, Briggs of Cancun has not paid Rive any amount in satisfaction of the arbitration award.

25. Rive has never expressly waived its right to arbitration under the agreements between Rive and Briggs of Cancun.

26. Neither Rive nor Briggs of Cancun were parties to any criminal proceedings in Cancun, Mexico.

## II. CONCLUSIONS OF LAW

1. The instant litigation has been filed pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention"), codified at 9 U.S.C. § 201 *et seq.*, to which both Mexico and the United States are signatories.

2. Because the Convention was negotiated pursuant to the Treaty power set forth in the U.S. Constitution, and Congress passed enabling legislation to make the Convention the highest law of the land, the Convention must be enforced over all prior inconsistent rules of law. *Sedco, Inc. v. Petroleos Mexicanos Mexican National Oil Co.*, 767 F.2d 1140, 1145 (5th Cir.1985).

3. An action or proceeding falling under the Convention is deemed to arise under the laws and treaties of the United States. 9 U.S.C. § 203.

4. Federal district courts have original jurisdiction over such an action or proceeding, and venue is proper in any district in which, save for the arbitration agreement, an action or proceeding with respect to the controversy between the parties could be brought, or in such district which embraces the place designated in the agreement as the place of arbitration if such place is within the United States. 9 U.S.C. § 204.

5. Under 9 U.S.C. § 202, the following arbitration awards fall under the Convention:

An arbitration agreement or arbitral award arising out of a legal relationship, whether contractual or not, which is considered as commercial, including a transaction, contract, or agreement described in section 2 of this title, falls under the Convention. An agreement or award arising out of such a relationship which is entirely between citizens of the United States shall be deemed not to fall under the Convention unless that relationship involves property located abroad, envisages performance or enforcement abroad, or has some other reasonable relation with one or more foreign states. For the purpose of this section a corporation is a citizen of the United States if it is incorporated or has its principal place of business in the United States.

6. Under Article III of the Convention, "[e]ach Contracting State shall recognize arbitral awards as binding and enforce them in accordance with the rules of procedure of the territory where the award is relied upon ..." 9 U.S.C. § 201 note.

6. The Fifth Circuit has stated that awards of foreign arbitrators that fall under the Convention are to be enforced by U.S. courts "just as easily as domestic arbitral awards." *Schlumberger Technology Corp. v. United States*, 195 F.3d 216, 217 (5th Cir.1999).

8. The Convention requires a U.S. court to treat a foreign arbitral award as it would a domestic award, subject to limited defenses, including incapacity of a party, illegality of the agreement, lack of due process, an award outside the scope of arbitration, an improper arbitration panel, or when the arbitration award has been vacated or is not final. *Id.*, citing Convention, arts. III & V.

9. Article IV of the Convention provides the procedure for enforcing arbitral awards and reads, in part:

1. To obtain the recognition and enforcement mentioned in the preceding article, the party applying for recognition and enforcement shall, at the time of the application, supply:

(a) The duly authenticated original award or a duly certified copy thereof;

(b) The original agreement referred to in article II or a duly certified copy thereof.

10. Article II of the Convention requires that there be an "agreement in writing" under which the parties agree to submit to arbitration all or any differences which have arisen or may arise between them in respect of a defined legal relationship, whether contractual or not, concerning a subject matter capable of settlement by arbitration. The term "agreement in writing" includes an arbitral clause in a contract or an arbitration agreement, signed by the parties or contained in an exchange of letters of telegrams.

11. There is no dispute in this matter that the arbitral award and the relevant agreements between Rive and Briggs of Cancun have been supplied to the Court.

12. Thus, under the terms of the Convention and the enabling federal statute, this Court has the authority to recognize and enforce the arbitral award at issue in this matter.

13. Numerous federal courts have recognized that "[T]he 1958 Convention clearly shifted the burden of proof to the party defending against enforcement and limited his defenses to seven set forth in Article V." *Parsons & Whittemore Overseas Co. v. Societe Generale de L'Industrie du Papier,* 508 F.2d 969, 973 (2d Cir.1974).

14. Under Article V(1), recognition and enforcement may be refused if the party resisting the award furnished to the competent authority where the recognition and enforcement is sought, proves that:

(a) the parties to the agreement were under some incapacity, or the agreement is not valid under the law to which the parties have subjected it or, failing any indication thereon, under the law of the country where the award was made; or

(b) the party against whom the award is invoked was not given proper notice of the appointment of the arbitrator or of the arbitration proceedings or was otherwise unable to present his case; or

(c) the award deals with a difference not contemplated by or not falling within the terms of the submission to arbitration, or it contains decisions on matters beyond the scope of the submission to arbitration; however, if the decisions on matters submitted to arbitration can be separated from those not so submitted, that part of the award which contains decisions on matters submitted to arbitration may be recognized and enforced; or

(d) the composition of the arbitral authority or the arbitral procedure was not in accordance with the agreement of the parties, or, failing such agreement, was not in accordance with the law of the country where the arbitration took place; or

(e) the award has not yet become binding on the parties, or has been set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made.

9 U.S.C. § 201 note.

15. Additionally, Article V(2) provides that recognition and enforcement may be refused if the competent authority finds that:

(a) the subject matter of the difference is not capable of settlement by arbitration under the law of that [the forum] country; or

(b) the recognition or enforcement of the award would be contrary to the public policy of that [the forum] country.

9 U.S.C. § 201 note.

16. According to the Convention and repeated federal decisions in this and other circuits, these are the only available defenses to an action to enforce a foreign arbitral award.

17. Waiver of the right to arbitrate is not among the seven defenses to enforcement of a foreign arbitral award set forth in the Convention. Thus, as a matter of law, defendant's argument that the arbitration award should not be enforced by this Court because plaintiff waived it is unavailing.[4]

18. Alternatively, even if defendant's waiver defense was not precluded by the Convention, in the Fifth Circuit, "[w]aiver will be found when the party seeking arbitration substantially invokes the judicial process to the detriment or prejudice of the other party." *Miller Brewing Co. v. Fort Worth Dist. Co.*, 781 F.2d 494, 497 (5th Cir.1986). Thus, waiver (if permissible at all in the context presented) requires both a substantial invocation of the judicial process and either detriment or prejudice to the other party.

19. Further, in evaluating whether a waiver occurred under applicable law, it must be borne in mind that "[w]aiver of arbitration is not a favored finding, and there is a presumption against it." *Id.* at 496.

20. In the same vein, the United States Supreme Court has stated that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Memorial Hosp. v. Mercury Construction Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983).

21. In considering what amounts to a substantial invocation of the judicial process, federal courts have required active participation in a lawsuit or some other type of act inconsistent with the desire to arbitrate. For example, in *Parcel Tankers, Inc. v. Formosa Plastics Corp.*, 569 F.Supp. 1459, 1467 (S.D.Tex.1983), the district court found that "[a]ctions constituting waiver may include, *inter alia,* some combination of filing an answer, setting up a counterclaim, pursuing discovery, and moving for a continuance prior to moving for a stay pending arbitration."

22. With respect to prejudice, the Fifth Circuit has found that "[w]hen one party reveals a disinclination to resort to arbitration on any phase of suit involving all parties, those parties are prejudiced by being forced to bear the expenses of a trial ... Arbitration is designed to avoid this very expense. Substantially invoking the litigation machinery qualifies as the kind of prejudice ... that is the essence of waiver." *E.C. Ernst, Inc. v. Manhattan Construction Co. of Texas*, 559 F.2d 268, 269 (5th Cir.1977).

23. "[M]erely initiating litigation, without more, does not effect a waiver" because no actual prejudice results from that isolated action. *Lauricia v. Microstrategy Inc.*, 114 F.Supp.2d 489 (E.D.Va. 2000).

24. The Court finds that Rive's filing of a Statement of Facts with the Attorney General in Quintana Roo did not amount to substantial invocation of the judicial process, and was not inconsistent

---

**4.** Moreover, it appears from the evidence that the argument that the filing of the criminal Statement of Facts resulted in a waiver of arbitration by Rive was considered and rejected by the arbitration committee. *See* Rec. Doc. 169, ¶ c; Rec. Doc. 141 ¶ c.

with Rive's intention to arbitrate, especially given the fact that the Statement of Facts was filed eight months after arbitration was requested. Further, Rive's actions in filing the Statement of Facts did not prejudice Briggs of Cancun with respect to the ongoing arbitration. Accordingly, Rive did not waive its right to arbitration in this matter.

25. Article V(1)(b) of the Convention states that a foreign arbitration award can be refused confirmation where a party lacked notice or was "otherwise unable to present his case." 9 U.S.C. § 201 note. This defense "basically corresponds to the due process defense that a party was not given 'the opportunity to be heard at a meaningful time and in a meaningful manner' as defined in *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 902, 47 L.Ed.2d 18." *Generica Ltd. v. Pharmaceutical Basics, Inc.*, 125 F.3d 1123, 1129 (7th Cir.1997) (other citations omitted).

26. Because Briggs of Cancun was continuously informed of all hearing dates and was provided sufficient opportunity to present witnesses and evidence in defense of the action, Briggs of Cancun was given proper notice of the arbitration proceedings.

27. The due process guarantee incorporated in article V(1)(b) of the Convention requires that "an arbitrator must provide a fundamentally fair hearing." *Generica Ltd.*, 125 F.3d at 1130. "A fundamentally fair hearing is one that 'meets "the minimal requirements of fairness"—adequate notice, a hearing on the evidence, and an impartial decision by the arbitrator.' " *Id.* "[P]arties that have chosen to remedy their disputes through arbitration rather than litigation should not expect the same procedures they would find in the judicial arena." *Id.* Essentially, in exchange for the convenience and other benefits obtained through arbitration, parties lose "the right to seek redress from the court

for all but the most exceptional errors at arbitration." *Dean v. Sullivan*, 118 F.3d 1170, 1173 (7th Cir.1997).

28. Consistent with the federal policy of encouraging arbitration and enforcing arbitration awards, the defense that a party was "unable to present its case" raised pursuant to article V(1)(b) of the Convention is narrowly construed. *Parsons & Whittemore Overseas Co. v. Societe Generale de L'Industrie du Papier*, 508 F.2d 969, 975 (2d Cir.1974).

29. In the instant case, the Court finds that Briggs of Cancun was not "unable to present its case," because Briggs of Cancun could have participated by means other than David Briggs's physical presence at the arbitration. For instance, Briggs of Cancun could have sent a company representative to attend; could have sent its attorney to attend; or David Briggs could have attended by telephone.

30. Moreover, the evidence indicates that Briggs of Cancun **did participate** to the extent that it designated an arbitrator and filed over 80 pages of legal argument and documentation in support of its position. Because Briggs of Cancun has brought forward no additional information or evidence that it would have presented at the arbitration if it had the opportunity to do so, the Court finds that Briggs of Cancun did have an opportunity to meaningfully participate in the arbitration.

31. In a case presenting analogous facts, the district court in *Empresa Constructora Contex Limitada v. Iseki*, 106 F.Supp.2d 1020, 1026 (S.D.Cal.2000), held that the defendant's due process rights under the Convention were not violated when the corporate defendant's owner and C.E.O., as well as other corporate representatives, failed to attend the arbitration held in Chile claiming that they feared arrest. Finding that because the defendant was a corporate entity distinct from

its owners and representatives and could therefore be adequately represented by counsel competent to handle the company's defense, defendant did not prevail in its V(1)(b) defense.

■ 32. Additionally, it has also been held that fear of arrest and extradition do not constitute an inability to attend an arbitration hearing. *See, Nat'l Dev. Co. v. Khashoggi,* 781 F.Supp. 959 (S.D.N.Y. 1992).

33. For the foregoing reasons, the Court finds that Briggs of Cancun's defense under article V(1)(b) of the Convention must fail. The Court also specifically finds that even if there was a valid arrest warrant pending against David Briggs for some period of time, Briggs of Cancun is not entitled to a defense under article V(1)(b) of the Convention because Briggs of Cancun could have participated through its Mexican attorney or corporate representative or by telephone. Further, Briggs of Cancun has not demonstrated that it was prejudiced in any way by whatever restrictions the alleged criminal action might have imposed, because it has not pointed to exonerating evidence that it would have presented, but could not, but for the filing of the criminal Statement of Facts.

34. The Court need not consider the parties' discussion of the public policy defense under the Convention, because that defense is not one of the narrow issues preserved for trial following Judge Schwartz's ruling on the Motion to Reconsider the grant of summary judgment in plaintiff's favor. However, if it were before the Court, the Court would find that its conclusion that due process requirements were met undermines this argument, and that enforcement of this award does not violate the public policies of Mexico, the United States, or the State of Louisiana.

35. Similarly, the Court does not revisit the issue of whether the arbitration award is final, because the issue was previously determined by Judge Schwartz, and further, is mooted by the fact that Briggs of Cancun did not post a bond as requested by the Court.

36. Thus, the Court **ORDERS** that the Mexican arbitration award dated June 24, 1998 be and it is hereby recognized and · enforced against Briggs of Cancun, Inc. in all respects.

37. The Court **FURTHER ORDERS** the parties to submit, within ten days from entry of this order, a joint proposed form for final judgment in accordance with these findings and conclusions.